No. 24-1900

---

# In the
# United States Court of Appeals
# For the Fourth Circuit

---

JOHN DOE AND JANE DOE,
*Plaintiffs-Appellees,*

v.

JOSHUA MAST, STEPHANIE MAST, AND RICHARD MAST,
*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the Western District of Virginia
Case No. 3:22-cv-49

---

## APPELLEES' MOTION TO DISMISS
## FOR LACK OF JURISDICTION

---

Maya M. Eckstein
Lewis F. Powell III
Kevin S. Elliker
HUNTON ANDREWS KURTH LLP
951 E. Byrd Street
Richmond, VA 23219
(804) 788-8200
kelliker@HuntonAK.com

January 2, 2025          *Counsel for Appellees*

[*Additional counsel listed on signature page*]

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. _____      Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)

_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?      YES      NO


2.      Does party/amicus have any parent corporations?      YES      NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?      YES      NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?                    YES    NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)      YES    NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                    YES    NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?                    YES    NO
      If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _____          Date: _____

Counsel for: _____

# TABLE OF CONTENTS

**Page**

Table of Authorities.................................................................ii

Introduction............................................................................1

Background..............................................................................3

Argument.................................................................................8

I.    The Court lacks jurisdiction because Appellants failed to timely notice their appeal of the Protective Order..........................8

II.   The Court lacks jurisdiction because the Contempt Order is not an appealable order. ...........................................................12

    A.    Section 1292(a) does not apply because the Protective Order is not an injunction.....................................................13

    B.    The collateral order doctrine does not apply. ......................16

III.  The Court should decline to exercise mandamus jurisdiction over the untimely appeal of an unappealable order well within the district court's discretion. ............................................20

Conclusion.............................................................................26

Certificate of Compliance.....................................................27

Certificate of Service ...........................................................28

i

# TABLE OF AUTHORITIES

**Page**

## Cases

*Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33 (1980) ........................20

*Bowles v. Russell*, 551 U.S. 205 (2007) ........................................ 8, 10, 12

*Campbell-McCormick, Inc. v. Oliver*, 874 F.3d 390 (4th Cir. 2017) ......................................................................................17

*Carson v. Am. Brands, Inc.*, 450 U.S. 79 (1981) ....................................15

*Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949)............ 13, 16

*Collins ex rel. J.Y.C.C. v. Doe Run Res. Corp.*, 65 F.4th 370 (8th Cir. 2023) ................................................................................19

*Covil Corp. ex rel. Protopatas v. U.S. Fid. & Guar. Co.*, 544 F. Supp. 3d 588 (M.D.N.C. 2021) ......................................................22

*Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863 (1994) .................................................................................17

*Doe v. Pub. Citizen*, 749 F.3d 246 (4th Cir. 2014).................................18

*Doe v. Sidar*, 93 F.4th 241 (4th Cir. 2024)............................................18

*Doe v. Vill. of Deerfield*, 819 F.3d 372 (7th Cir. 2016)...........................18

*Fed. Trade Comm'n v. Minneapolis-Honeywell Regul. Co.*, 344 U.S. 206 (1952) .......................................................................9, 10

*Groves v. United States*, 941 F.3d 315 (7th Cir. 2019) ............................9

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271 (1988) ...................................................................................14

*In re Bestwall, LLC*, 99 F.4th 679 (4th Cir. 2024).................................12

*In re Braxton*, 258 F.3d 250 (4th Cir. 2001)............................... 14, 20, 21

*In re Catawba Indian Tribe of S.C.*, 973 F.2d 1133 (4th Cir. 1992) (en banc) ...............................................................20, 21, 26

*In re Murphy-Brown, LLC*, 907 F.3d 788 (4th Cir. 2018) ......... 22, 23, 25

*James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993) ....................... 4, 15, 18, 26

*Kelly v. City of New York*, No. 01 Civ. 8906, 2003 WL 548400 (S.D.N.Y. Feb. 24, 2003) ................................................................ 23

*LaRoche v. Dunlap*, 607 F. App'x 323 (4th Cir. 2015) ............................. 8

*Lewis v. Bloomsburg Mills, Inc.*, 608 F.2d 971 (4th Cir. 1979) ........ 14, 15

*MDK, Inc. v. Mike's Train House, Inc.*, 27 F.3d 116 (4th Cir. 1994) ...................................................................................................... 19

*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009) ................... 17, 19

*Morgan v. Brittany Woods Homeowner's Ass'n, Inc.*, 777 F. App'x 676 (4th Cir. 2019) ............................................................... 8

*Parrish v. United States*, 74 F.4th 160 (4th Cir. 2023) ......................... 12

*S.B. v. Fla. Agric. & Mech. Univ. Bd. of Trs.*, 823 F. App'x 862 (11th Cir. 2020) ................................................................. 9, 16, 18

*Schlagenhauf v. Holder*, 379 U.S. 104 (1964) ........................................ 21

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984) .............................. 23

*Selective Ins. Co. of Am. v. Westfield Ins. Co.*, 73 F.4th 239 (4th Cir. 2023) ................................................................... 13

*Shingara v. Skiles*, 420 F.3d 301 (3d Cir. 2005) ................................... 25

*Tootle v. Beaux Art Inst. of Plastic Surgery*, 738 F. App'x 792 (4th Cir. 2018) ................................................................. 8

*Under Seal v. Under Seal*, 326 F.3d 479 (4th Cir. 2003) ...................... 22

*United States ex rel. Lutz v. United States*, 853 F.3d 131 (4th Cir. 2017) ................................................................. 13, 14, 15

*United States v. Doe*, 962 F.3d 139 (4th Cir. 2020) ............................... 25

**Statutes and Rules**

28 U.S.C. § 1292(a) ........................................................... 13, 15, 16

28 U.S.C. § 2107(a) ........................................................................ 8

28 U.S.C. § 2107(c) ...................................................................... 11

Fed. R. App. P. 26(a)(1)(C) ................................................................ 11

Fed. R. App. P. 4(a)(1)(A) ................................................................... 8

Fed. R. App. P. 4(a)(5) ................................................................... 8, 11

Fed. R. App. P. 4(a)(6) ................................................................... 8, 11

Fed. R. Civ. P. 77(d)(2) .................................................................... 10

**Other Authorities**

15A Wright, Miller & Cooper, *Fed. Prac. & Proc.* § 3901 (2d
ed. 1992) ................................................................................... 12

*Gagging order*, Merriam-Webster.com Dictionary, *available
at* https://bit.ly/3DihRhT ........................................................ 23

iv

## INTRODUCTION

The thirty-day deadline to file a notice of appeal is among the most bright-line rules in federal civil procedure. Missing that deadline by even one day deprives the court of appeals of jurisdiction. Moreover, most orders may not be appealed before a final judgment. The exceptions to that rule are narrow and policed carefully to avoid piecemeal litigation. This interlocutory appeal presents both jurisdictional flaws: Appellants waited two years to appeal a non-appealable order.

First, the Court lacks jurisdiction because the appeal is untimely. Appellants claim to be appealing the district court's August 2024 Contempt Order. But their arguments are aimed at the September 2022 Protective Order, which the Contempt Order reaffirmed. Because the Contempt Order did not substantively revise the Protective Order, it did not reset the deadline to notice an appeal, which lapsed more than two years ago. On that basis alone, the Court should dismiss this appeal.

Second, even if this were construed as a timely appeal of the Contempt Order, civil contempt orders are not immediately appealable. Appellants try to skirt that restriction with two alternative bases for jurisdiction, but neither passes muster. They attempt to recast the

1

Contempt Order as a refusal to dissolve an injunction, but the Protective Order is no injunction. Rather, it is a procedural order that governs the conduct of litigation, and one that is unrelated to the merits. Their alternative argument under the collateral order doctrine fares no better, because that exception applies categorically to matters that cannot wait for a post-judgment appeal. Any perceived harm wrought by protecting the Does' identities during the litigation can be addressed through the standard post-judgment route. Because the Contempt Order is not immediately appealable, the Court lacks jurisdiction.

Failing to show appellate jurisdiction, Appellants make a final request for mandamus relief by construing the Protective Order as a "gag order." But they cannot transform the Protective Order into a "gag order" simply by calling it one. The limited restriction on Appellants' ability to reveal John and Jane Doe's identities does not infringe on Appellants' First Amendment rights. This is not a case for the extraordinary remedy of a writ of mandamus. The Court should dismiss the appeal.

## BACKGROUND

Plaintiffs John and Jane Doe brought this federal lawsuit in September 2022 to seek justice for the civil wrongs committed by Defendants Joshua Mast, Stephanie Mast, Richard Mast, and others in furtherance of their scheme to lure the Does to the United States and take their child, Baby Doe, under the auspices of improperly obtained adoption papers. JA53. When they filed their complaint, the Does asked to proceed under pseudonyms and for the entry of a protective order that would restrict the public disclosure of their identities. JA47. The Does justified this request by explaining they feared for their safety and for that of their families who remained in Afghanistan if their presence in the United States or the circumstances of Baby Doe's abduction were revealed to their Afghan communities or the Taliban.

The Does' fears were supported by a sworn declaration from John Doe. JA344–45 (filed under seal). He articulated the concern that Afghans who are even perceived as having worked with the U.S. military have been persecuted in Afghanistan. The Does feared that the Taliban might so associate them based on the circumstances that brought them to the United States. Moreover, they feared that others in Afghanistan

could mistakenly believe that they intentionally gave or sold Baby Doe to an American family in exchange for safe passage to the United States— something that also would place the Does and, especially, their families in Afghanistan in danger. *See id.*

On September 13, 2022, the district court granted the motion. JA50 (the "Protective Order"). Using this Court's framework under *James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993), the court found "that disclosure of Plaintiffs' identities and identifying information would pose a substantial risk to the physical safety of Plaintiffs and other innocent non-parties." JA51. Given that risk, plus "the age of minor Plaintiff Baby Doe" and the fact "that any risk of prejudice or unfairness (if any should exist) is more than sufficiently mitigated by the measured steps" outlined by the Protective Order, the Court imposed the following conditions:

1. Defendants, their counsel, and their representatives were "prohibited from disclosing any information that directly or indirectly identifies Plaintiffs or their family members to any person, including but not limited to the Plaintiffs' names and the locations of their residences abroad and places of birth, unless that person first executes a non-disclosure agreement enforceable through the contempt sanction."

2. All case-related filings and papers "disseminated to any person who has not executed a non-disclosure agreement

4

      enforceable through the contempt sanction" must refer to John, Jane, and Baby Doe by their pseudonyms.

   3. Documents identifying the Does "shall be filed under seal, with redacted copies placed in the public files."

   4. Defendants must "disclose to Plaintiffs' counsel any person to whom Defendants, their counsel or representatives, have disclosed Plaintiffs' identities, and shall provide Plaintiffs with copies of the executed non-disclosure agreements required by this [Protective] Order."

   5. In depositions, the Does must be referred to by their pseudonyms.

JA51–52.

While the Masts had not yet appeared on September 13, 2022, they did so shortly thereafter—on September 20 (Joshua and Stephanie) and 26 (Richard). JA14–15 (ECF 30, 35). Yet for months, the Protective Order went unchallenged. Then, in January 2023, Joshua and Stephanie Mast moved to modify, vacate, or amend the Protective Order. JA20 (ECF 130). Richard Mast followed suit a few weeks later, then filed a second motion to vacate the Protective Order in March 2023. JA21 (ECF 141), JA24 (ECF 176). The Does opposed those requests.

Notwithstanding their still-pending requests to modify the Protective Order, Joshua and Stephanie, along with Joshua's younger brother Jonathan (whom the district court would find aided and abetted

5

Joshua), proceeded to violate it multiple times. The Does responded to both violations with emergency show-cause motions.

First, in January 2023, Joshua and Stephanie appeared on the nationally broadcast television program *CBS Mornings* on two successive days and were interviewed about the "custody battle" playing out in Virginia court. JA103. These segments broadcast identifying photographs of Baby Doe, including ones showing the child in late 2019 and August 2021. JA103, JA105.

Second, in June 2023, Jonathan Mast appeared on the One America News Network to promote a fundraising campaign for the Masts facilitated by an organization called the Pipe Hitter Foundation (PHF). JA172. The appearance, as well as multiple social media posts by the PHF, featured identifying photographs of Baby Doe. JA170–72. Discovery later revealed Joshua to be at the center of those efforts, having contacted the PHF for the fundraising campaign, provided identifying photographs to the organization, and recruited his younger brother to act as his official go-between specifically because the Protective Order precluded Joshua from identifying the Does himself. JA164–70.

In a 38-page order issued August 16, 2024, the district court resolved the Masts' motions attacking the Protective Order and denied in part and granted in part the Does' show-cause motions. JA305 (the "Contempt Order"). The court reaffirmed that the Does' request satisfied the *James* framework and found that no party had "presented any substantial evidence to challenge Plaintiffs' evidence that" revealing their identities posed a serious risk that the Taliban might "carry out violence against the Does' families remaining in Afghanistan." JA316.

Having sustained the Protective Order, the district court turned to the show-cause motions. As to the CBS interviews, the court found the evidence insufficient to show Joshua or Stephanie knowingly violated the Protective Order. JA328–29. As for the PHF campaign, however, the court found that Joshua and his brother Jonathan, who acted as Joshua's representative, had repeatedly and knowingly violated the Protective Order. JA331–33. Based on these findings, the court found Joshua and Jonathan in contempt and invited the Does to submit a motion to recover their reasonable attorney's fees for remedying the violations. JA341–42.[1]

---

[1] The Does' fee petition remains pending below. JA44 (ECF 489).

On September 16, 2024, Joshua, Stephanie, and Richard Mast noticed an appeal of the Contempt Order. JA343. Jonathan Mast did not appeal.

## ARGUMENT

### I. The Court lacks jurisdiction because Appellants failed to timely notice their appeal of the Protective Order.

"[T]he timely filing of a notice of appeal in a civil case is a jurisdictional requirement." *Bowles v. Russell*, 551 U.S. 205, 214 (2007). In cases between private parties, a notice of appeal must be filed "within thirty days after the entry of [the appealed] judgment, order or decree," unless the district court extends or reopens the appeal period. 28 U.S.C. § 2107(a); *see* Fed. R. App. P. 4(a)(1)(A), 4(a)(5)–(6). Missing that deadline by even one day deprives the appeals court of jurisdiction.[2]

The Masts purport to appeal the district court's August 2024 Contempt Order and not the September 2022 Protective Order. JA343. But "[t]he question is whether the lower court, in its second order, has disturbed or revised legal rights and obligations which, by its prior

---

[2] *See, e.g.*, *Morgan v. Brittany Woods Homeowner's Ass'n, Inc.*, 777 F. App'x 676, 677 (4th Cir. 2019); *Tootle v. Beaux Art Inst. of Plastic Surgery*, 738 F. App'x 792, 793 (4th Cir. 2018); *LaRoche v. Dunlap*, 607 F. App'x 323, 324 (4th Cir. 2015).

judgment, had been plainly and properly settled with finality." *Fed. Trade Comm'n v. Minneapolis-Honeywell Regul. Co.*, 344 U.S. 206, 212 (1952). If not, then the second order does not restart the clock to appeal matters that could have been appealed earlier. *Id.* Concluding otherwise "renders a deadline subject to tolling, even when tolling is otherwise prohibited." *Groves v. United States*, 941 F.3d 315, 324 (7th Cir. 2019) (Barrett, J.).

An analogous decision in the Eleventh Circuit provides instructive guidance. In *S.B. v. Florida Agricultural and Mechanical University Board of Trustees*, the trial court granted a plaintiff's motion to proceed anonymously. 823 F. App'x 862, 863 (11th Cir. 2020). Four months later, the defendant sought an order requiring the plaintiff to use her full name at trial. *Id.* The district court denied that request, and the defendant took an interlocutory appeal of that denial. *Id.* The Eleventh Circuit dismissed the appeal for lack of jurisdiction because the second order "did not disturb or revise the right decided" in the first order, and the defendant "did not appeal the first order within the 30-day time limit." *Id.* at 868 (citing *Minneapolis-Honeywell*, 344 U.S. at 212).

9

The same thing happened here. The district court entered the Protective Order on September 13, 2022. JA50. Some 23 months later, the Contempt Order "reiterated, without change, everything which had been decided" under the Protective Order. *Minneapolis-Honeywell*, 344 U.S. at 212. It neither "disturbed [n]or revised legal rights and obligations" decided by the Protective Order. *Id.* The appeal period therefore did not start anew; the deadline to appeal the Protective Order lapsed more than two years ago. The Court thus lacks jurisdiction over this appeal. *See Bowles*, 551 U.S. at 213.[3]

The fact that the district court entered the Protective Order before Appellants appeared in the case does not rescue their appeal. The "[l]ack of notice of the entry" of an order "does not affect the time for appeal or relieve—or authorize the court to relieve—a party for failing to appeal within the time allowed, except as allowed by Federal Rule of Appellate Procedure 4(a)." Fed. R. Civ. P. 77(d)(2). The exception within Rule 4(a), which implements 28 U.S.C. § 2107(c), allows a party to move to extend

---

[3] *See, e.g.*, *Sammons v. McCarthy*, No. 22-1642, 2023 WL 3002738, at *2 (4th Cir. Apr. 19, 2023) (dismissing as untimely portion of appeal attacking older order that had not been appealed within 30 days and was not substantively revised in later-appealed order); *Nationwide Mut. Ins. Co. v. Folden*, 63 F. App'x 701, 702 (4th Cir. 2003) (same).

the time to appeal "no later than 30 days after the time" expires by showing "excusable neglect or good cause." Fed. R. App. P. 4(a)(5); *see* 28 U.S.C. § 2107(c). After that, the appeal period may be reopened only if (1) the movant did not receive notice within 21 days of the order's entry; (2) no party is prejudiced by the reopening; *and* (3) the extension motion is filed no later than 180 days after entry of the order or 14 days after the movant received notice, whichever is earlier. Fed. R. App. P. 4(a)(6); *see* 28 U.S.C. § 2107(c).

Appellants didn't do any of this. They never moved the district court to extend or reopen the time to appeal the Protective Order, and it is too late to do so now. Under Rule 4(a)(5), the time to seek any extension expired long ago—no later than November 14, 2022.[4] And Appellants cannot seek to reopen the appeal period under Rule 4(a)(6) because they received notice of the September 13, 2022 Protective Order no later than the appearances of their counsel on September 20 and 26, 2022—well before the lapse of 21 days from the order's entry. JA14–15 (ECF 30, 35).

---

[4] The date 30 days after the original October 13, 2022 deadline to appeal the Protective Order fell on a weekend, so the period to seek an extension under Rule 4(a) would have "continue[d] to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. App. P. 26(a)(1)(C).

For that same reason, they cannot claim excusable neglect or good cause for the delay.  In all events, the deadline to appeal the Protective Order was not altered by any lack of notice.  *See Parrish v. United States*, 74 F.4th 160, 167 (4th Cir. 2023) (dismissing appeal for lack of jurisdiction where neither exception under § 2107(c) applied).

"The rule is well settled that failure to file a timely notice of appeal defeats the jurisdiction of a court of appeals."  *Bowles*, 551 U.S. at 210 (quoting 15A Wright, Miller & Cooper, *Fed. Prac. & Proc.* § 3901 (2d ed. 1992)).  On that basis alone, the Court should dismiss the appeal.

## II. The Court lacks jurisdiction because the Contempt Order is not an appealable order.

If the Court construes Appellants' appeal as a timely challenge to the Contempt Order, that leads to an independent jurisdictional flaw: the premature appeal of a non-appealable order.  "A party to litigation may not immediately appeal a civil contempt order."  *In re Bestwall, LLC*, 99 F.4th 679, 683 (4th Cir. 2024).  The party must instead "await final judgment to appeal."  *Id.* at 684.  Because the Contempt Order is not immediately appealable, the Court lacks jurisdiction.  *Id.* at 685.

Faced with that ineluctable conclusion, Appellants conceive two avenues for immediate appellate review.  *See* Appellants' Br. 5.  First,

they contend that the Contempt Order "was an order refusing to dissolve [an] injunction" and thus appealable under 28 U.S.C. § 1292(a). *Id.* Second, they invoke the collateral order doctrine recognized in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949). *Id.* But neither of these theories survives scrutiny.

### A. Section 1292(a) does not apply because the Protective Order is not an injunction.

Appellants begin by contending that the Protective Order is an injunction against them, and the Contempt Order marked "an order refusing to dissolve that injunction." Appellants' Br. 5. Under that logic, they invoke 28 U.S.C. § 1292(a), which gives courts of appeals jurisdiction over "interlocutory orders . . . refusing to dissolve or modify injunctions."

But simply calling something an injunction doesn't make it one. When deciding "whether an order amounts to an injunction," courts "first look at the practical effect of the order." *United States ex rel. Lutz v. United States*, 853 F.3d 131, 139 (4th Cir. 2017). "Generally, an injunction commands or prevents a specified action." *Selective Ins. Co. of Am. v. Westfield Ins. Co.*, 73 F.4th 239, 243 (4th Cir. 2023). Of course, most court orders "command" or "prevent" some specified act. Scheduling orders command litigants to act by a certain date and prevent them from

13

doing other things after a certain date. Orders on discovery motions may command the production or prevent the disclosure of information. Orders on motions in limine may prevent certain arguments or evidence at trial. "[B]ut Congress did not envision that every interlocutory order restraining a party's actions could be appealed under § 1292(a)(1)." *United States ex rel. Lutz*, 853 F.3d at 139.

Instead, an order is considered an injunction under § 1292(a)(1) only if it is "directed to the merits of the underlying action." *In re Braxton*, 258 F.3d 250, 257 (4th Cir. 2001). A lower court's order "that relates only to the conduct or progress of litigation before that court ordinarily is not considered an injunction." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 279 (1988). Thus, "[w]ords of restraint in an order which is only a step in an action does not render the order appealable under § 1292(a)(1)." *Lewis v. Bloomsburg Mills, Inc.*, 608 F.2d 971, 973 (4th Cir. 1979).

The Protective Order does not "touch on the merits of the claim." *Id.* Instead, it "relates only to the conduct or progress of litigation before" the district court. *Gulfstream Aerospace*, 485 U.S. at 279. As such, it

represents "merely a step in the litigation process" and therefore is "not appealable under § 1292(a)(1)." *Lewis*, 608 F.2d at 973.

Further, even if the Protective Order had the same practical effect as an injunction, that does not render it immediately appealable. As the Supreme Court has explained, "§ 1292(a)(1) was intended to carve out only a limited exception to the final-judgment rule," so "a litigant must show more than that the order has the practical effect" as an injunction. *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981). Instead, an order appealed under § 1292(a)(1) must be "one that (1) may have a 'serious, perhaps irreparable consequence' and (2) can only be 'effectually challenged' through immediate appeal." *United States ex rel. Lutz*, 853 F.3d at 139 (quoting *Carson*, 450 U.S. at 84).

Appellants cannot clear either hurdle. If the district court had denied the Protective Order or lifted it in its Contempt Order—and thus subjected Plaintiffs and others to the substantial risk of harm associated with publicly identifying them as parties to this litigation—such an order would have been immediately appealable. *See James v. Jacobson*, 6 F.3d 233, 236–38 (4th Cir. 1993). But there is no equivalent injury to Appellants when the district court grants and then keeps in place an

15

order meant to prevent harm to Plaintiffs and other non-parties. *Cf. S.B.*, 823 F. App'x at 865 (noting that "an order *denying* anonymity for a party constitutes a final appealable order," but expressing doubt that the same would be true for "an order *granting* leave to proceed anonymously" because "a defendant challenging an order granting a motion to proceed anonymously does not face the same irreparable harm").

Because the Protective Order is not an injunction, the Contempt Order is not an order denying a request to dissolve one, so jurisdiction cannot be found in 28 U.S.C. § 1292(a)(1).

**B.    The collateral order doctrine does not apply.**

Appellants next urge the Court to find that their attempted appeal is permitted under the collateral order doctrine. That doctrine allows appeals from a "small class" of decisions that "finally determine claims of right separable from, and collateral to, rights asserted in the action" and are "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen*, 337 U.S. at 546. To qualify under the collateral order doctrine, an order must meet three "stringent" requirements: it must "[1] conclusively determine the disputed question,

16

[2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Campbell-McCormick, Inc. v. Oliver*, 874 F.3d 390, 395 (4th Cir. 2017).

The Supreme Court has stressed that the doctrine must "never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994) (citation omitted). For that reason, the importance of an allegedly collateral issue matters a great deal. *See Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 107 (2009). The reviewing court must look beyond the particularized interests of the party in a case and ask instead "whether delaying review until the entry of final judgment would imperil a substantial public interest or some particular value of a high order." *Id.* (quotation marks omitted). If the "class of claims, taken as a whole, can be adequately vindicated by other means," then the collateral doctrine order does not apply. *Id.* (rejecting application of the doctrine to interlocutory order requiring disclosure of privileged materials because "postjudgment

appeals generally suffice to protect the rights of litigants and ensure the vitality of the attorney-client privilege").

Although "this Court has held 'non-anonymity orders' are appealable under the collateral order doctrine," *Doe v. Sidar*, 93 F.4th 241, 245 (4th Cir. 2024) (citing *James*, 6 F.3d at 236–38), it has not held that the entire category of orders *granting* anonymity is similarly appealable. And there is good reason to distinguish between the two. Orders denying anonymity protections pose a harm that cannot be undone. *See James*, 6 F.3d at 237. "If parties were required to litigate the case through to a final judgment on the merits utilizing their true names, the question of whether anonymity is proper would be rendered moot." *Doe v. Vill. of Deerfield*, 819 F.3d 372, 376 (7th Cir. 2016). In contrast, orders that permit anonymity do not pose the same risk of irreparable harm. "If a district court errs in granting a[n] [anonymity] motion, an appellate court may reverse and remand for additional proceedings in which [the] plaintiff is required to reveal their identity." *S.B.*, 823 F. App'x at 865. Indeed, this Court has done exactly that. *See Doe v. Pub. Citizen*, 749 F.3d 246, 273–75 (4th Cir. 2014) (reversing, after entry of final judgment, a party-pseudonymity order).

18

At bottom, this appeal fails to meet the "stringent" requirements of the collateral order doctrine. Instead, it resembles a discovery dispute over the kind of information that must be protected from public disclosure and the procedure parties should go through to share that information with third parties. "Discovery orders generally do not" satisfy the collateral order doctrine. *MDK, Inc. v. Mike's Train House, Inc.*, 27 F.3d 116, 119 (4th Cir. 1994). "[T]hey are necessarily only a stage in the litigation and almost invariably involve no determination of the substantive rights involved in the action." *Id.* (quotation marks omitted). Because that "class of claims, taken as a whole, can be adequately vindicated by other means"—on appeal from a final judgment—the collateral order doctrine does not provide a basis for appellate jurisdiction of the interlocutory ruling here. *Mohawk Indus.*, 558 U.S. at 107; *cf. Collins ex rel. J.Y.C.C. v. Doe Run Res. Corp.*, 65 F.4th 370, 375–76 (8th Cir. 2023) (rejecting application of the collateral order doctrine to a protective order prohibiting *ex parte* communications).

III. **The Court should decline to exercise mandamus jurisdiction over the untimely appeal of an unappealable order well within the district court's discretion.**

As a last-ditch effort, Appellants ask the Court to "construe this appeal as a petition for a writ of mandamus." Appellants' Br. 5. The Court should reject the request out of hand.

It is often said "that the remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980). This Court has observed that it "cannot overemphasize the extraordinary nature" of mandamus, "stemming from the federal court system's longstanding disapproval of piecemeal appellate review." *Braxton*, 258 F.3d at 256. "The very power of the writ of mandamus demands that its availability be limited to narrow circumstances lest it quickly become a shortcut by which disappointed litigants might circumvent the requirements of appellate procedure mandated by Congress." *In re Catawba Indian Tribe of S.C.*, 973 F.2d 1133, 1135 (4th Cir. 1992) (en banc). When an order may be reviewed on appeal from a final judgment, this Court has "consistently held . . . that [it] will not issue a writ of mandamus." *Braxton*, 258 F.3d at 261.

20

Given the extraordinary nature of mandamus relief, a party seeking the writ faces a "rigorous test." *Id*. There are five requirements a petitioner must show:

> (1) he has a clear and indisputable right to the relief sought; (2) the responding party has a clear duty to do the specific act requested; (3) the act requested is an official act or duty; (4) there are no other adequate means to attain the relief he desires; and (5) the issuance of the writ will effect right and justice in the circumstances.

*Id*. (emphasizing a mandamus petitioner must "demonstrat[e] each and every one of" these requirements). Moreover, "when mandamus is sought to compel an act normally committed to the discretion of the district court the petitioner faces an even more rigorous standard" and must show that the district court's order "amount[s] to a judicial usurpation of power." *Catawba Indian Tribe*, 973 F.2d at 1136 (quotation marks omitted). "The writ of mandamus is not to be used when the most that could be claimed is that the district courts have erred in ruling on matters within their jurisdiction." *Schlagenhauf v. Holder*, 379 U.S. 104, 112 (1964) (quotation marks omitted).

Appellants do not even attempt to meet the rigorous test for mandamus. Instead, they rely on unelaborated citations to this Court's

use of mandamus to review gag orders. *See* Appellants' Br. 5 (citing *In re Murphy-Brown, LLC*, 907 F.3d 788, 796 (4th Cir. 2018), and *Under Seal v. Under Seal*, 326 F.3d 479, 485 n.5 (4th Cir. 2003)). But Appellants can no more transform the Protective Order into a gag order by mere say-so than they can alchemize appellate jurisdiction by labeling it an injunction.

Appellants nevertheless insist that the Protective Order is a "gag order" because (they say) it "restricts [them] from speaking about issues related to the case." Appellants' Br. 22. But that characterization oversimplifies the Protective Order's scope and effect. A judicial order protecting specific information implicates "the common law tradition of public access to judicial proceedings," but it does not raise the same concerns as a true gag order. *Covil Corp. ex rel. Protopatas v. U.S. Fid. & Guar. Co.*, 544 F. Supp. 3d 588, 603 (M.D.N.C. 2021). A court order restricting the dissemination of litigation-related information "implicates the First Amendment rights of the restricted party to a far lesser extent than would restraints on dissemination of information in a different

context." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984).[5]  Indeed,

"gag orders in civil cases are quite rare." *Murphy-Brown*, 907 F.3d at

796.  Protective orders are not.

The Protective Order here proves the point.  The district court did

not prohibit Appellants from "giv[ing] or authoriz[ing] any extrajudicial

statement or interview . . . relating to the trial, the parties or issues in

this case"[6] or from "talk[ing] about the case or anything related to it in

public."[7]  Instead, the Protective Order prohibited the disclosure of the

identities of "Plaintiffs or their family members," including their "names

and the locations of their residences abroad and places of birth."  JA51.

And even then, the Protective Order did not issue a blanket prohibition,

because such information may be shared with third parties who sign a

non-disclosure agreement.  *See id.*

---

[5] *See also Kelly v. City of New York*, No. 01 Civ. 8906, 2003 WL 548400, at *7 (S.D.N.Y. Feb. 24, 2003) (noting a judicial non-disclosure order was "not a 'gag order'" because the parties were "free to speak with the press about this case generally, and about any documents that are already in the hands of the press or the public," but neither side could "disclose the identities of any non-party employees whose names have not already been disclosed").

[6] *Murphy-Brown*, 907 F.3d at 792–93 (alteration in original).

[7] *Gagging order*, Merriam-Webster.com Dictionary, *available at* https://bit.ly/3DihRhT (cited at Appellants' Br. 22).

The district court emphasized that it "did not issue a 'gag order.'" JA313. Instead, the Protective Order permitted Plaintiffs "to proceed using pseudonyms" and imposed "corollary" conditions necessary to ensure that protection. *See* JA 313–14 (noting "an order permitting a party to use a pseudonym would be of scant (if any) utility if the opposing litigant could publicly name them"). The court acknowledged that the "decision to allow a litigant to use a pseudonym involves some intrusion into the public's right of access to the courts and judicial proceedings, implicating First Amendment and common law interests." JA313. But "those interests are accounted for in the *James* factors." JA313–14 (citations omitted).

Appellants insist that the district court's decision "rests on a false dichotomy" that the Protective Order "must be either a pseudonym order or a gag order." Appellants' Br. 22. But the contrast drawn by the district court was between the body of caselaw permitting anonymity orders—*James* and its progeny—and the absence of any "precedent that would support applying the 'strict scrutiny' standard under these circumstances." JA314. And Appellants still cannot point to any case

construing an anonymity order requested under *James* as a content-based gag order.

Finally, although "this Court has at times referred to mandamus as the 'preferred vehicle' for seeking review of sealing-related orders," that preference "is usually limited to appeals filed by third parties, such as members of the press." *United States v. Doe*, 962 F.3d 139, 144 (4th Cir. 2020). To be sure, parties in litigation may be burdened by a true gag order. *See, e.g.*, *Murphy-Brown*, 907 F.3d at 796. But mandamus is permitted only where that party can demonstrate an *actual* injury that cannot be remedied through a traditional appeal. The news media fits that description, because waiting until a final judgment to appeal a sealing order offers meaningless relief. *See Shingara v. Skiles*, 420 F.3d 301, 305 (3d Cir. 2005) ("After all, nobody wants to read yesterday's news."). So, too, with a party ordered not to say anything about the case at all. *Murphy-Brown*, 907 F.3d at 796. But Appellants have not shown how they are injured by the requirement that they maintain the pseudonymity required to ensure the safety of the Does and other innocent non-parties.

The decision whether a party may proceed through litigation anonymously is "committed in the first instance to trial court discretion." *James*, 6 F.3d at 238. Appellants disagree with the district court's decision to issue the Protective Order, but that does not open the door to mandamus. Their bare disagreement with the district court does not reveal "a judicial usurpation of power." *Catawba Indian Tribe*, 973 F.2d at 1136. Mandamus is inappropriate.

## CONCLUSION

For all these reasons, the Court should dismiss this appeal for lack of jurisdiction.

January 2, 2025                    Respectfully submitted,

                                  */s/ Kevin S. Elliker*

                                  Maya M. Eckstein
                                  Lewis F. Powell III
                                  Kevin S. Elliker
                                  HUNTON ANDREWS KURTH LLP
                                  951 E. Byrd Street
                                  Richmond, VA 23219
                                  (804) 788-8200
                                  meckstein@HuntonAK.com
                                  lpowell@HuntonAK.com
                                  kelliker@HuntonAK.com

                                  Brittany M.J. Record
                                  Ehson Kashfipour
                                  LATHAM & WATKINS LLP

555 Eleventh Street, NW, Suite 1000
Washington, DC  20004-1304
Telephone: (202) 637-2200
brittany.record@lw.com
ehson.kashfipour@lw.com

Blair Connelly
Zachary Rowen
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10029
Telephone: (212) 906-1200
blair.connelly@lw.com
zachary.rowen@lw.com

*Counsel for Appellees*

## CERTIFICATE OF COMPLIANCE

I certify that this motion complies with the word limitation of Fed.
R. App. P. 27(d)(2) because the portion of the motion subject to that rule
is 5,192 words and therefore does not exceed the 5,200-word limit.

I further certify that the motion complies with the typeface and type
style requirements of Fed. R. App. P. 27(d)(1)(E), Fed. R. App. P. 32(a)(5),
and Fed. R. App. P. 32(a)(6) because this motion has been prepared in 14-
point Century Schoolbook typeface using Microsoft Word.

*/s/ Kevin S. Elliker*

Kevin S. Elliker

27

## CERTIFICATE OF SERVICE

I certify that the foregoing has been filed on this 2nd day of January, 2025, using the Court's CM/ECF system, which will serve notice on all counsel of record.

/s/ *Kevin S. Elliker*
Kevin S. Elliker

28