No. 24-1900

In the

# United States Court of Appeals

## For the Fourth Circuit

———————————

BABY DOE, JOHN DOE, & JANE DOE,

*Plaintiffs-Appellees,*

v.

JOSHUA MAST, STEPHANIE MAST, & RICHARD MAST,

*Defendants-Appellants.*

———————————

On Appeal from the United States District Court
for the Western District of Virginia
Honorable Norman K. Moon
Case No. 3:22-cv-00049

———————————

**APPELLANTS' RESPONSE TO MOTION TO DISMISS**

———————————

John S. Moran
MCGUIREWOODS LLP
Suite 500
888 16th Street, NW
Washington, D.C. 20006
T: 202-525-0356

David Eliezer Yerushalmi
AMERICAN FREEDOM LAW CENTER
Suite 189
2020 Pennsylvania Avenue, NW
Washington, D.C. 20006
T: 646-262-0500

January 13, 2025

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................1

BACKGROUND ...................................................................................3

ARGUMENT .......................................................................................8

I.    This Is Not an Untimely Appeal of the September 2022 Order; It Is
      a Timely Appeal of the August 2024 Order..............................................9

II.   The Masts Are Not Appealing the Contempt Ruling But the Same
      Order's Ruling on Speech Restrictions, Which Is Appealable Now.......10

III.  The Priority of Mandamus Is A Merits Issue, and the Court's
      Jurisdiction to Review Gag Orders by Mandamus Is Well-
      Established ........................................................................................13

CONCLUSION ....................................................................................14

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*American Malting Co. v. Keitel*,
  209 F. 351 (2d Cir. 1913) ................................................................. 11

*Ashcraft v. Conoco, Inc.*,
  218 F.3d 288 (4th Cir. 2000) ............................................................ 7

*CBX Techs., Inc. v. GCC Techs., LLC*,
  457 F. App'x 299 (4th Cir. 2011) ..................................................... 10

*Cohen v. Beneficial Indus. Loan Corp.*,
  337 U.S. 541 (1949) ........................................................................ 11

*Fed. Trade Comm'n v. Minneapolis-Honeywell Regul. Co.*,
  344 U.S. 206 (1952) ..................................................................... 1, 9

*In re Bestwall, LLC*,
  99 F.4th 679 (4th Cir. 2024) ........................................................ 2, 10

*In re Murphy-Brown, LLC*,
  907 F.3d 788 (4th Cir. 2018) ....................................................... 3, 13

*In re Rafferty*,
  864 F.2d 151 (D.C. Cir. 1988) ..................................................... 2, 12

*James v. Jacobson*,
  6 F.3d 233 (4th Cir. 1993) ....................................................... 2, 8, 12

*Kerns v. United States*,
  585 F.3d 187 (4th Cir. 2009) ........................................................... 10

*McLean v. Cent. States, Se. & Sw. Areas Pension Fund*,
  762 F.2d 1204 (4th Cir. 1985) .......................................................... 7

*Near v. Minnesota ex rel. Olson*,
  283 U.S. 697 (1931) ........................................................................ 11

*Parker v. Columbia Broad. Sys., Inc.*,
  320 F.2d 937 (2d Cir. 1963) ........................................................ 2, 11

*Under Seal v. Under Seal*,
  326 F.3d 479 (4th Cir. 2003) ........................................................ 2, 3, 13

*United States v. Brown*,
  218 F.3d 415 (5th Cir. 2000) ...........................................................2, 11

*United States v. Ford*,
  830 F.2d 596 (6th Cir. 1987) ...........................................................2, 12

**Statutes**

28 U.S.C. § 1292(a) ...................................................................... 2, 11–12

**Other Authorities**

Juliet Linderman et al.,
  *Afghan couple accuse US Marine of abducting their baby*, Associated Press
  (Oct. 20, 2022), https://bit.ly/4hCBPUi .................................................5

Rozina Ali,
  *How Did This Man Think He Had the Right to Adopt This Baby?*, The New York
  Times (Nov. 20, 2022), https://nyti.ms/3CybZ3G .................................................5

# INTRODUCTION

The motion to dismiss filed by Appellees John and Jane Doe attacks jurisdictional strawmen and urges the Court to treat the merits of this appeal as threshold jurisdictional issues. The arguments raised in that motion are therefore either (a) irrelevant to the Court's disposition of this case or (b) properly considered by the merits panel after full briefing and argument, rather than by a motions panel at the procedural threshold. Appellants Joshua, Stephanie, and Richard Mast therefore respectfully urge the Court to deny the motion to dismiss outright or to carry it over to the merits panel.

***First***, the Masts do not purport to appeal the September 2022 Protective Order. The Does' arguments that the Court lacks jurisdiction to hear an appeal from that order, *see* MTD at 8–12, are thus wholly beside the point. To the extent they argue that the appeal should be *construed* as an appeal of the September 2022 order and dismissed on that basis, the argument fares no better. The district court plainly clarified and expanded the original *ex parte* protective order when it entered the August 2024 Order appealed from here. Even the Does acknowledge that a new opportunity to appeal arises when the district court has "'revised legal rights and obligations.'" MTD at 8 (quoting *Fed. Trade Comm'n v. Minneapolis-Honeywell Regul. Co.*, 344 U.S. 206, 212 (1952)). And to the extent the parties dispute what restrictions the August 2024 Order imposes above and beyond the September 2022

Order, that question is wrapped up in the merits of the appeal and should be decided only after full briefing and argument.

**Second**, the Masts also do not purport to appeal the August 2024 Order insofar as it contains a preliminary finding of contempt. *Cf.* MTD at 12 (arguing that "'[a] party to litigation may not immediately appeal a civil contempt order'") (quoting *In re Bestwall, LLC*, 99 F.4th 679, 283 (4th Cir. 2024)). Instead, the Masts have appealed the August 2024 Order insofar as it denied their motions to lift or modify the protective order, which had been pending for over a year in parallel with the Does' contempt motions. That ruling is appealable under 28 U.S.C. § 1292(a) as an order refusing to dissolve an injunction. *See Parker v. Columbia Broad. Sys., Inc.*, 320 F.2d 937, 938–39 (2d Cir. 1963) (holding that a protective order which restricted parties' speech outside the courtroom was "in the nature of a preliminary injunction, and therefore appealable under 28 U.S.C. § 1292(a)(1)" and also "repugnant to the First Amendment to the Constitution and to historic principles of equity" on the merits). Alternatively, as other Courts of Appeals have held, the order is appealable under the collateral order doctrine.[1] *Accord James v. Jacobson*, 6 F.3d 233, 236 (4th Cir. 1993); *Under Seal v. Under Seal*, 326 F.3d 479, 484–85 (4th Cir. 2003).

---

[1] *See, e.g.*, *United States v. Brown*, 218 F.3d 415, 422 (5th Cir. 2000) (citing *In re Rafferty*, 864 F.2d 151, 155 (D.C. Cir. 1988); *United States v. Ford*, 830 F.2d 596, 598 (6th Cir. 1987)).

*Finally*, this Court has made clear that, when necessary, a party may obtain review of a gag order by writ of mandamus, since mandamus has traditionally "play[ed] an important and necessary role in protecting First Amendment freedoms." *In re Murphy-Brown, LLC*, 907 F.3d 788, 796 (4th Cir. 2018); *see also Under Seal*, 326 F.3d at 485 n.5 (describing the procedural benefits of using mandamus to review gag order and other sealing issues). The Does' argument boils down to the contention that mandamus is not appropriate because the August 2024 Order does not represent an improper gag order. *See* MTD at 22. But that is simply an argument against the Masts' challenge on the merits, not grounds for the Court to dismiss the appeal now.

The Court can address the merits of the Does' contentions when the time is right. And the Masts will address these issues again in their merits reply. In the meantime, the Court should either deny this motion to dismiss outright, or at most, carry it over to the merits panel so that it can be addressed together with the merits after full briefing and argument.

## BACKGROUND

Joshua and Stephanie Mast are loving adoptive parents who made great personal sacrifices to provide a good home for their adoptive daughter, a severely injured orphaned minor rescued by U.S. Army Rangers from a battlefield in Afghanistan. Their adoptive daughter ("the Child") has lived happily with them for more than three years along with her adoptive siblings and received the love and care

3

she needs and deserves. The Masts also ensured that John and Jane Doe—Plaintiffs-Appellees here—were evacuated from Afghanistan as it fell to the Taliban, in gratitude for their help in evacuating the Child and that John and Jane Doe made it to the United States. After the Child and the Does arrived in the United States, and the Masts took custody of the Child pursuant to a Virginia adoption order, the Does' attitude changed. They sought to reopen and set aside the adoption and accused the Masts of "kidnapping." Their state-court challenge to the adoption is currently on appeal before the Supreme Court of Virginia, and their false and salacious allegations of "kidnapping" are the subject of defamation counter-claims below.

This appeal concerns an *ex parte* protective order the district court issued in September 2022, before Defendants' counsel had even entered appearances, and a recent August 2024 order the district court entered that clarified the protective order and denied Appellants' motions to lift or modify it. Among other things, that *ex parte* protective order directs that Defendants are "prohibited from disclosing any information that directly *or indirectly* identifies Plaintiffs or their family members *to any person* . . . unless that person first executes a non-disclosure agreement enforceable through the contempt sanction." JA51 (emphases added). Because John Doe and Jane Doe originally purported to bring claims on behalf of the Child herself (which the District Court has since dismissed due to their lack of standing to raise

4

them), that prohibition has included the direct or indirect "identification" of the Masts' own adoptive child.[2]

The Protective Order's sweeping speech restrictions have hindered the Masts from investigating the facts and circumstances surrounding their case and preparing their defense, including by preventing them from talking to key witnesses or others with vital information, unless those individuals first agree to execute an NDA. It has also made it more difficult for the Masts to raise money to fund the expensive and protracted litigation and prevented them from sharing their story about their journey to adopt (and keep) their daughter. All the while, despite the Plaintiffs' plea for anonymity, they have chosen to publicize this case and engage in a national media battle against the Masts in which they have attacked the Mast's character and made false assertions about this litigation.

Once it became clear that Plaintiffs were using their pseudonymity and the speech restrictions in the *ex parte* protective order as a shield in an asymmetrical media war,[3] and that it was hamstringing the Masts from investigating and preparing

---

[2] The District Court's contempt finding, contained in the same August 2024 Order appealed from here purports to find that Joshua Mast violated the *ex parte* protective order when his brother Jonathan shared family photos with a non-profit foundation and thereby identified *the Child*—not John Doe or Jane Doe. JA330–334.

[3] *See, e.g.*, Juliet Linderman et al., *Afghan couple accuse US Marine of abducting their baby*, Associated Press (Oct. 20, 2022), https://bit.ly/4hCBPUi; Rozina Ali, *How Did This Man Think He Had the Right to Adopt This Baby?*, The New York Times (Nov. 20, 2022), https://nyti.ms/3CybZ3G.

their defense, the Masts and Richard Mast filed motions to lift or modify the protective order. *See* Mot. to Modify Protective Order, ECF No. 130; Mot. to Vacate Protective Order, ECF No. 176. Together, they raised three principal challenges to the *ex parte* protective order. First, that Plaintiffs had not met the necessary standard to proceed by pseudonyms—particularly in light of their extensive press contacts and litigation for months using their actual names, *see* Mot. to Modify Protective Order at p. 8–11, ECF No. 130; Mot. to Vacate Protective Order at p. 18–19, ECF No. 176; second, that the *ex parte* protective order's speech restrictions constitute an unconstitutional gag order that fails under strict scrutiny, *see* Mot. to Modify Protective Order at p. 12–15, ECF No. 130; Mot. to Vacate Protective Order at p. 8–17, ECF No. 176; and third, that the *ex parte* gag order's speech restrictions are unconstitutionally vague, Mot. to Vacate Protective Order at p. 17–18, ECF No. 176.[4]

The District Court did not rule on these motions for a year and a half. Nevertheless, in the meantime, Plaintiffs twice filed motions seeking to have the Masts held in contempt for purported violations based on their alleged "identification" of the Child to third parties who did not sign an NDA. *See*

---

[4] While the Masts did not raise the vagueness argument in this original motion to modify, Richard Mast did. *See* Mot. to Vacate Protective Order at p. 17–18, ECF No. 176. The Masts also raised the issue subsequently on several occasions, *see* Response to Mot. For Order to Show Cause at p. 9-10, ECF No. 154, and the district court addressed it on the merits.

Emergency Mot. for Order to Show Cause, ECF No. 141; Supplemental Mot. for
Order to Show Cause, ECF No. 142. In opposing these motions, the Masts both
defended their conduct—which they believe in good faith did not violate the *ex parte*
protective order—and interposed their previously articulated objections to the *ex
parte* protective order's speech restrictions. It is well-established that civil contempt
may lie only for the violation of a "valid decree" and thus no contempt can be found
where the underlying order is determined to be invalid. *Ashcraft v. Conoco, Inc.*,
218 F.3d 288, 301, 302–03 (4th Cir. 2000) (movant must show the violation of the
court's "valid decree"); *see also McLean v. Cent. States, Se. & Sw. Areas Pension
Fund*, 762 F.2d 1204, 1210 (4th Cir. 1985) (reversing civil contempt finding where
underlying order invalid).

In an Opinion and Order dated August 16, 2024 ("August 2024 Order"), the
District Court denied Defendants' motions and refused to lift the *ex parte* protective
order's speech restrictions, holding that those restrictions did not constitute a "gag
order"—a common term for court orders restricting parties from speaking about a
case outside of court. The District Court held that it was not required to apply the
strict scrutiny standard,[5] and instead that the entire Protective Order need only be

---

[5] In perfunctory and footnoted dicta, the District Court further noted that even if
strict scrutiny applied to the aspect of the Protective Order restricting Defendants'
speech, it was satisfied in this case. *See* JA326. As discussed in this motion, the
District Court's conclusory treatment of this issue is wholly insufficient to satisfy
the rigorous strict scrutiny standard for multiple reasons, including because the

assessed under this Court's *Jacobson* standard for granting leave to use pseudonyms. The Court not only left the speech restrictions in the protective order in place, it also separately held Joshua Mast in civil contempt for violating them because his brother Jonathan shared pictures of the Masts' adoptive daughter with a non-profit foundation that was helping them raise money for their defense.

The District Court cited no precedent for its claim that it had the right to grant both forms of relief pursuant only to the *Jacobson* standard, and in doing so bootstrap a sweeping restriction on the Masts' speech without first engaging any of the constitutionally required strict scrutiny analysis. Instead, the District Court simply surmised that all pseudonym orders must implicitly come with such a speech restriction attached, otherwise such orders would have "scant (if any) utility." *See* JA314.

## ARGUMENT

The issues Appellees raise in their motion to dismiss are either irrelevant to the Court's disposition of this case or properly considered with the merits, after full briefing and argument, rather than at the procedural threshold. The Court can address the merits of Appellees' contentions when the time is right, and at this stage, should either deny this motion to dismiss outright or carry it over to the merits panel.

---

District Court erroneously placed the burden on the Masts to satisfy the standard. *See supra* III.

8

I.     **This Is Not an Untimely Appeal of the September 2022 Order; It Is a Timely Appeal of the August 2024 Order**

The Does first argue that the Masts have not timely appealed the September 2022 Order. *See* MTD at 8–12. But the Masts never purported to appeal that order. The Does' arguments on this score are thus largely beside the point. To the extent the Does argue that certain arguments should be foreclosed because the Masts did not appeal the September 2022 Order at the outset, see MTD at 8–9, that is an issue of preclusion on the merits, not appellate jurisdiction. The merits panel should address that argument after full briefing and argument.

This is not a case like *Federal Trade Commission v. Minneapolis-Honeywell Regulator Co.*, 344 U.S. 206 (1952), where a court entered a final appealable judgment and then entered a subsequent decree that simply "reentered or revised in an immaterial way" its prior judgment. *Id.* at 211. Here, the August 2024 Order represents a distinct and appealable order in at least two important respects. First, the district court clarified the scope of the September 2022 order in ways that are material to the Masts' First Amendment challenge. *See, e.g.*, Opening Br. 40. Second, the district court's September 2022 Order reflected a determination that an *ex parte* protective order was justified on a preliminary basis based on a scant, one-sided record; the August 2024 Order, by contrast, reflected a determination that the speech restrictions remained justified notwithstanding subsequent developments and further proffered evidence from the Masts that undermined its issuance. *See* Mot. to

9

Modify Protective Order, ECF No. 130; Mot. to Vacate Protective Order, ECF No. 176. It is simply inaccurate, and inconsistent with the cases on which the Does rely, to say that the September 2022 Order and August 2024 Order were the same for purposes of appellate jurisdiction.

Finally, to the extent the parties dispute the amount of daylight between the September 2022 Order and the August 2024 Order, that dispute is so intertwined with the merits of the appeal that it should not be resolved at this threshold stage. "Where the jurisdictional facts are so intertwined with the facts upon which the ultimate issues on the merits must be resolved, the entire factual dispute is appropriately resolved only by a proceeding on the merits." *CBX Techs., Inc. v. GCC Techs., LLC*, 457 F. App'x 299, 301 (4th Cir. 2011) (quotation omitted); *see also Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009).

## II.    The Masts Are Not Appealing the Contempt Ruling But the Same Order's Ruling on Speech Restrictions, Which Is Appealable Now

The Does next argue that the Masts cannot appeal the August 2024 order because it included a preliminary contempt finding (but no sanction) and "'[a] party to litigation may not immediately appeal a civil contempt order.'" MTD at 12 (quoting *In re Bestwall, LLC*, 99 F.4th 679, 283 (4th Cir. 2024)). But once again, the Does attack a strawman. The Masts have not purported to appeal the contempt ruling but rather the district court's denial of their motions to lift or modify the *ex parte*

protective order—and in particular, the speech restrictions that flow from that decision.

The district court exercised its discretion to rule on the Masts' motions about the protective order and the Does' contempt motions in a single order. But that does not strip this court of jurisdiction to review the former rulings which are otherwise appealable. As the Masts have explained in their merits briefing, there are at least two independent grounds for this Court to exercise jurisdiction over the district court's August 2024 Order.

*First*, that ruling is appealable as an order refusing to dissolve an injunction. *See* 28 U.S.C. § 1292(a)(1). In *Parker v. Columbia Broadcasting System, Inc.*, 320 F.2d 937 (2d Cir. 1963), the Second Circuit held that a protective order, at least insofar as it restricted the parties' ability to speak freely *outside* the courtroom, was "in the nature of a preliminary injunction, and therefore appealable under 28 U.S.C. § 1292(a)(1)." *Id.* at 938. On the merits, the court went on to hold that the protective order was "repugnant to the First Amendment to the Constitution and to historic principles of equity." *Id.* at 939 (citing, *inter alia*, *Near v. Minnesota ex rel. Olson*, 283 U.S. 697 (1931); *American Malting Co. v. Keitel*, 209 F. 351 (2d Cir. 1913)).

*Second*, that ruling is alternatively appealable as a collateral order under *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949). As the Fifth Circuit noted in *United States v. Brown*, 218 F.3d 415 (5th Cir. 2000), several Courts of

11

Appeals have "found gag orders appealable under the collateral order doctrine by trial participants, including the litigants themselves." *Id.* at 422 (citing *In re Rafferty*, 864 F.2d 151, 155 (D.C. Cir. 1988); *United States v. Ford*, 830 F.2d 596, 598 (6th Cir. 1987)). In *Ford*, for its part, the Sixth Circuit made clear that, while the Courts of Appeals have identified different sources for appellate jurisdiction over gag orders (including 28 U.S.C. 1292(a), the collateral order doctrine, and mandamus), they have all generally agreed that gag orders are immediately appealable. 830 F.2d at 598.

While not directly on point, this Court's decision in *James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993), supports that same approach. There, this Court concluded that the collateral order doctrine supported appellate jurisdiction of an order denying anonymity. *See id.* at 236–38. The Does attempt to distinguish such cases and argue for a one-sided rule in favor of parties seeking anonymity. *See* MTD at 18. They argue that "orders that permit anonymity do not pose the same risk of irreparable harm." *Id.* Even if that were true of some more modest anonymity order, it is certainly not true of the *de facto* gag order entered here. Indeed, the whole point of the Masts' appeal is that the district court's speech restrictions are causing irreparable harm by interfering with their ability fairly to litigate the case *and* by constraining their First Amendment right to speak out on important matters of public concern.

12

Once again, the Does may quibble with that characterization of the effects of the district court's speech restrictions. It is readily apparent that they do. But that is a dispute on the merits and one that should be resolved, if necessary, by the merits panel after full briefing and argument.

### III.   The Priority of Mandamus Is a Merits Issue, and the Court's Jurisdiction to Review Gag Orders by Mandamus Is Well-Established

The Does finally argue that the Court should reject the Masts' alternative request for a writ of mandamus out of hand. *See* MTD at 20–26. But that again is a merits issue that should be decided by the merits panel after full briefing and argument. And contrary to the Does' suggestions, mandamus is an entirely appropriate remedy in this context. *See In re Murphy-Brown, LLC*, 907 F.3d 788, 796 (4th Cir. 2018); *Under Seal v. Under Seal*, 326 F.3d 479, 485 n.5 (4th Cir. 2003).

Of course, mandamus is generally considered a drastic and extraordinary remedy, and the Does cite all of the usual cases that say as much. But this Court has also made clear that mandamus has long "play[ed] an important and necessary role in protecting First Amendment freedoms." *In re Murphy-Brown, LLC*, 907 F.3d at 796. This Court has also described the procedural advantages of mandamus in policing a district court's imposition of speech restrictions without unduly disrupting ongoing lower-court proceedings. *See Under Seal*, 326 F.3d at 485 n.5.

The Does have no response to that clearly established Fourth Circuit precedent other than merely asserting that the district court did not impose an unconstitutional

13

gag order. *See* MTD at 22. That is wrong for the reasons the Masts have already explained, *see* Opening Br. 21–25, and will explain further in their Reply Brief and at oral argument. But it is also decidedly a merits issue. The Court should decline the Does' invitation to prejudge the merits by treating the issue as jurisdictional when it plainly is not.

## CONCLUSION

The Court should deny the motion to dismiss, or in the alternative, should carry it over to the merits panel to be deciding after full briefing and argument.

Dated: January 13, 2025        Respectfully submitted,

*/s/ John S. Moran*
John S. Moran
MCGUIREWOODS LLP
Suite 500
888 16th Street, NW
Washington, D.C. 20006
T: 202-525-0356

*Counsel for Defendant-Appellants*
*Joshua Mast and Stephanie Mast*

David Eliezer Yerushalmi
AMERICAN FREEDOM LAW
CENTER
Suite 189
2020 Pennsylvania Avenue, NW
T: 646-262-0500

*Counsel for Defendant-Appellant*
*Richard Mast*

## CERTIFICATE OF COMPLIANCE

This response complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because the portion of the response subject to that rule is 3,475 words and therefore does not exceed the 5,200 word limit.

This response complies with the typeface and type style requirements of Fed. R. App. P. 27(d)(1)(E), Fed. R. App. P. 32(a)(5), and Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced 14-point Times New Roman font using Microsoft Word.

*/s/ John S. Moran*
John S. Moran

**CERTIFICATE OF SERVICE**

I hereby certify that on January 13, 2025, the foregoing was filed with the

Clerk of the United States Court of Appeals for the Fourth Circuit using the

appellate CM/ECF system, which will also serve counsel of record.

*/s/ John S. Moran*
John S. Moran