No. 24-1900

# In the
# United States Court of Appeals
# For the Fourth Circuit

JOHN DOE AND JANE DOE,
*Plaintiffs-Appellees,*

v.

JOSHUA MAST, STEPHANIE MAST, AND RICHARD MAST,
*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of Virginia
Case No. 3:22-cv-49

**APPELLEES' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS FOR LACK OF JURISDICTION**

Maya M. Eckstein
Lewis F. Powell III
Kevin S. Elliker
HUNTON ANDREWS KURTH LLP
951 E. Byrd Street
Richmond, VA 23219
(804) 788-8200
kelliker@hunton.com

January 21, 2025            *Counsel for Appellees*

[*Additional counsel listed on signature page*]

## TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................ii

Introduction ............................................................................................................ 1

Argument ................................................................................................................ 1

   I.    Appellants seek an end-run around the jurisdictional deadline for appealing the Protective Order. ................................................. 1

   II.   The Contempt Order is not an appealable order. ............................ 5

        A.    The Protective Order is not an injunction. ............................ 5

        B.    The collateral order doctrine does not apply. ........................ 7

   III.  Mandamus is inappropriate here. ................................................... 12

Conclusion ........................................................................................................... 13

Certificate of Compliance .................................................................................... 14

Certificate of Service ........................................................................................... 14

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710 F.2d 940
(2d Cir. 1983) ..................................................................................................... 7

*Campbell-McCormick, Inc. v. Oliver*, 874 F.3d 390 (4th Cir.
2017) ................................................................................................................... 8

*Carson v. Am. Brands, Inc.*, 450 U.S. 79 (1981) ...................................................... 6

*CBX Tech., Inc. v. GCC Tech., LLC*, 457 F. App'x 299 (4th Cir.
2011) ................................................................................................................... 4

*Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863
(1994) .................................................................................................................. 8

*Doe v. Coll. of New Jersey*, 997 F.3d 489 (3d Cir. 2021) ........................................ 10

*Doe v. Pub. Citizen*, 749 F.3d 246 (4th Cir. 2014) .................................................. 10

*Doe v. Sidar*, 93 F.4th 241 (4th Cir. 2024) .............................................................. 10

*FTC v. Minneapolis-Honeywell Regulator Co.*, 344 U.S. 206
(1952) .............................................................................................................. 2, 4

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S.
271 (1988) .......................................................................................................... 7

*In re Braxton*, 258 F.3d 250 (4th Cir. 2001) ........................................................... 13

*In re Murphy-Brown, LLC*, 907 F.3d 788 (4th Cir. 2018) ........................................ 7

*Int'l Prods. Corp. v. Koons*, 325 F.2d 403 (2d Cir. 1963) ........................................ 7

*James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993) ................................................ 10, 12

*M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp.,
Inc.*, 981 F.2d 160 (4th Cir. 1992) (en banc) ................................................... 12

*Martinez v. City of Chicago*, 499 F.3d 721 (7th Cir. 2007) ..................................... 4

*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009) ................................... 9, 11

*Parker v. CBS, Inc.*, 320 F.2d 937 (2d Cir. 1963) .................................................... 6

*S.B. v. Fla. Agric. & Mech. Univ. Bd. of Trs.*, 823 F. App'x 862
    (11th Cir. 2020) ................................................................................. 3, 4, 10

*Schlagenhauf v. Holder*, 379 U.S. 104 (1964) .......................................... 12

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984) ................................. 9

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ..................... 4

*Switzerland Cheese Ass'n, Inc. v. E. Horne's Mkt., Inc.*, 385
    U.S. 23 (1966) ............................................................................................ 5

*United States ex rel. Lutz v. United States*, 853 F.3d 131 (4th
    Cir. 2017) ............................................................................................... 5, 6

*United States v. Brown*, 218 F.3d 415 (5th Cir. 2000) .............................. 8

*United States v. Ford*, 830 F.2d 596 (6th Cir. 1987) ................................ 9

*Va. Dep't of Corr. v. Jordan,* 921 F.3d 180 (4th Cir. 2019) ....................... 4

**Statutes and Rules**

28 U.S.C. § 1292(a)(1) ........................................................................... 1, 5

Fed. R. Civ. P. 26(c) .................................................................................. 9

# INTRODUCTION

Appellants accuse the Does of "attack[ing] jurisdictional strawmen," but the so-called "strawmen" are Appellants' asserted bases for appellate jurisdiction. They claim to be appealing the district court's August 2024 Contempt Order, but their arguments make clear the focus of their appeal is the September 2022 Protective Order. Such an appeal is two years too late. They contend the Contempt Order is an order "refusing to dissolve or modify [an] injunction[]," 28 U.S.C. § 1292(a)(1), but the Protective Order is a procedural order unrelated to the merits. They invoke the collateral order doctrine, but they do not grapple with the requirements of that narrow exception to the final-judgment rule. And they seek refuge in mandamus, but that avenue is not open when an order may be reviewed on a final appeal. There is no basis for jurisdiction over this appeal, and the Court should grant the Does' Motion to Dismiss for Lack of Jurisdiction ("Mot."), Doc. 22.

# ARGUMENT

**I. Appellants seek an end-run around the jurisdictional deadline for appealing the Protective Order.**

Appellants do not dispute that an appeal of the September 2022 Protective Order would be untimely and jurisdictionally barred. Instead,

1

they insist they are appealing the portion of the October 2024 Contempt Order that denied their motions to vacate the Protective Order. But their argument rests on a distinction without a difference.

The test is whether the Contempt Order "disturbed or revised legal rights and obligations" settled in the Protective Order. *FTC v. Minneapolis-Honeywell Regulator Co.*, 344 U.S. 206, 212 (1952). To that end, Appellants contend (at 9) that the Contempt Order "clarified the scope" of the Protective Order. That is simply not true. This Court will search in vain for any such clarification, much less language that "disturbed or revised legal rights and obligations" settled under the Protective Order. *Minneapolis-Honeywell*, 344 U.S. at 212. When the district court denied Appellants' motions to amend, modify, or vacate the Protective Order, it "*retain[ed]* the Protective Order" and held that the Does "may *continue* to proceed in this litigation using their respective pseudonyms." JA326 (emphasis added). The Protective Order remains now as it did in September 2022.

Appellants also incorrectly argue (at 9) that they timely appealed the Contempt Order's "determination that the speech restrictions remained justified notwithstanding subsequent developments and

2

further proffered evidence from the Masts that undermined its issuance." There was *no* evidence "proffered" that "undermined" the need for the Protective Order. To be sure, Appellants *argued* the Protective Order "undermine[d] [their] discovery rights," but the district court found "the argument both speculative and underdeveloped." JA323. They offered "no specific facts, much less evidence, to substantiate the assertion." *Id.*[1]

In any event, the Eleventh Circuit's decision in *S.B.*—which Appellants do not acknowledge, much less address—once again gives useful guidance. In that case, the appeals court noted that the trial court's second order rejected "new arguments" that were raised "for the first time." *S.B. v. Fla. Agric. & Mech. Univ. Bd. of Trs.*, 823 F. App'x 862, 867 (11th Cir. 2020). But that did not mean the second order altered the parties' rights. Otherwise, "a litigant could avoid the deadline to appeal a collateral order by raising, at any time, new arguments on an issue that

---

[1] *See* JA323 n.9 (noting that counsel for Joshua and Stephanie Mast "did not back [the assertion] up with any evidence or specifics at that time, or in the months that have followed"); JA317 (noting "[t]he Masts have several counterarguments—but no supporting evidence—for why th[e] risk-of-harm factor should not weigh in favor of" the Does' "continued pseudonymity").

3

has already been decided." *Id.* The appeals court rejected the "invitation to sanction this type of end run around Rule 4's filing deadlines." *Id.*

The same reasoning calls for dismissing Appellants' appeal of the district court's decision to stick with the Protective Order. Otherwise, a party that misses its appeal deadline need only conceive of some "subsequent development" to revisit the issue and resuscitate an otherwise lost opportunity for interlocutory review. At bottom, "*nothing in the original order was revised, and as a result, no new time for appeal arose.*" *Martinez v. City of Chicago*, 499 F.3d 721, 726 (7th Cir. 2007).[2]

---

[2] Appellants suggest (at 10) that any "dispute" regarding the differences between the Protective Order and the Contempt Order call for the Court to "proceed[] on the merits." But there is no "daylight" between the two orders; the Contempt Order enforces the Protective Order, without any modification. Moreover, Appellants cite cases discussing a *trial* court's approach when "the jurisdictional and merits facts are intertwined." *CBX Tech., Inc. v. GCC Tech., LLC*, 457 F. App'x 299, 301 (4th Cir. 2011). When it comes to appellate jurisdiction, "[t]he Supreme Court has cautioned against exceptions that allow courts, for reasons of expedience, to sidestep jurisdictional issues." *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 187 (4th Cir. 2019) (noting that the Supreme Court has "overturned the practice of exercising 'hypothetical jurisdiction' to reach the merits first when the merits question was easy and the jurisdictional question was hard") (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)).

4

## II. The Contempt Order is not an appealable order.

Beyond raising the untimeliness of this appeal, the Does' motion to dismiss noted that none of the bases for appellate jurisdiction that Appellants invoked survive scrutiny. *First*, the Contempt Order is not appealable under 28 U.S.C. § 1292(a)(1) as an order "refusing to dissolve" an injunction, because the Protective Order is not an injunction. *See* Mot. 13–16. *Second*, while the collateral order doctrine applies to the denial of a pseudonymity order, the same is not true for the entry of a protective order granting pseudonymity. Mot. 16–19. As a result, nothing about the Contempt Order is immediately appealable, so this Court lacks jurisdiction to decide Appellants' arguments.

### A. The Protective Order is not an injunction.

"Most court orders are injunctions at some level of generality, but Congress did not envision that every interlocutory order restraining a party's actions could be appealed under § 1292(a)(1)." *United States ex rel. Lutz v. United States*, 853 F.3d 131, 139 (4th Cir. 2017). "Orders that in no way touch on the merits of the claim but only relate to pretrial procedures are not . . . 'interlocutory' within the meaning of § 1292(a)(1)." *Switzerland Cheese Ass'n, Inc. v. E. Horne's Mkt., Inc.*, 385 U.S. 23, 25 (1966). Moreover, § 1292(a)(1) requires "a 'serious, perhaps irreparable

5

consequence'" that may "only be 'effectually challenged' through immediate appeal." *United States ex rel. Lutz*, 853 F.3d at 139 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981)). Here, because the Protective Order does not "touch on the merits" and any purported consequences may be remedied later, it does not satisfy these requirements. *See* Mot. 14–16.

Rather than respond to these arguments, Appellants invoke a single inapposite out-of-circuit case, *Parker v. CBS, Inc.*, 320 F.2d 937 (2d Cir. 1963). In *Parker*, the Second Circuit confronted an order that, by its own terms, "*enjoined and restrained*" the parties "from in any way publishing, disseminating, publicizing or otherwise promulgating to any person or entity all or any portion of [a] document . . . or any of the matters contained therein." *Id.* at 938 (emphasis added). The court construed that order as a preliminary injunction appealable under § 1292(a)(1).

*Parker* does not give Appellants the jurisdictional foothold they desire. As the Second Circuit later explained in another case, "[t]he only question considered as to appealability" in *Parker* "was whether the order under appeal was a temporary restraining order or a preliminary

6

injunction—not whether it was the kind of command that constituted an 'injunction' within § 1292(a)(1)." *Int'l Prods. Corp. v. Koons*, 325 F.2d 403, 407 n.4 (2d Cir. 1963). On that basis, "it would have been more appropriate to have treated the appeal in *Parker* as a petition for mandamus" rather than an appeal under § 1292(a)(1). *Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710 F.2d 940, 944 n.3 (2d Cir. 1983).[3]

In all events, this Court is bound by the Supreme Court's more recent guidance that a lower court order "that relates only to the conduct or progress of litigation . . . ordinarily is not considered an injunction and therefore is not appealable under § 1292(a)(1)." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 279 (1988). Section 1292(a)(1) does not provide for jurisdiction in this appeal.

### B.   The collateral order doctrine does not apply.

The collateral order doctrine is a "'narrow' exception" to the final-judgment rule. *Campbell-McCormick, Inc. v. Oliver*, 874 F.3d 390, 395

---

[3] In this manner, the *Parker* injunction closely resembled a gag order in both its language and reviewability. *See In re Murphy-Brown, LLC*, 907 F.3d 788, 796 (4th Cir. 2018) (identifying the use of mandamus to address true "gag orders"). Mandamus is inappropriate here because the Protective Order is not a "gag order." *See infra* Part III; Mot. 22–24; Appellees' Br. 45–47.

7

(4th Cir. 2017) (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 869 (1994)). Here, the Contempt Order does not meet the doctrine's "stringent" requirements. *Id.*; *see* Mot. 19.

Appellants defend jurisdiction under the collateral order doctrine by insisting (at 11–12) that the Protective Order is a "gag order" and pointing to out-of-circuit precedent permitting interlocutory appeals of such orders. But a simple comparison of the orders in those cases and the Protective Order here undermines the argument. In *United States v. Brown*, the trial court overseeing a criminal proceeding *sua sponte* prohibited the

> parties, lawyers, and potential witnesses from giving to "any public communications media" "any extrajudicial statement or interview" about the trial (other than matters of public record) that "could interfere with a fair trial or prejudice any defendant, the government, or the administration of justice."

218 F.3d 415, 418–19 (5th Cir. 2000). Similarly, in *United States v. Ford*, the trial court *sua sponte* entered "a broadly worded" order that

> prohibit[ed] [the defendant] from "making" any "extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication," including any "opinion of or discussion of the evidence and facts in the investigation or case," any statement about a

8

> prosecuting attorney, any statement about "any alleged motive the government may have had in filing the indictment" or any statement "which relates to any opinion as to . . . the merits of the case."

830 F.2d 596, 597 (6th Cir. 1987) (ellipsis in original).

In contrast, the district court below "did not issue a 'gag order.'" JA313. Instead, the Protective Order is precisely what its name says it is: an order issued "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). It narrowly restricts Appellants "from disclosing any information that directly or indirectly identifies Plaintiffs or their family members." JA51. And that prohibition is not blanket; such disclosures are permitted to a person who "first executes a non-disclosure agreement enforceable through the contempt sanction." *Id.* The order "is not the kind of classic prior restraint that requires exacting First Amendment scrutiny." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984).

Moreover, Appellants ignore their obligation under the collateral order doctrine to explain why the "class of claims, taken as a whole," must be excepted from the final-judgment rule. *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 107 (2009). Instead, they simply point (at 12) to

9

*James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993), which they admit is "not directly on point." But the distinction between *James* and this case illustrates why the collateral order doctrine does not apply here. In *James*, the appellants challenged the *removal* of anonymity protections, which everyone "agree[d]" would "be effectively unreviewable on appeal from a final judgment." *James*, 6 F.3d at 237; *see Doe v. Sidar*, 93 F.4th 241, 245 (4th Cir. 2024) (describing *James* as permitting appeals of "non-anonymity orders"). "On the other hand, a defendant challenging an order granting a motion to proceed anonymously does not face the same irreparable harm." *S.B.*, 823 F. App'x at 865.

Appellants complain that this is a "one-sided rule," but that is beside the point. The binary outcomes of pseudonymity requests are not similarly situated for immediate appellate review. When the trial court denies a request to proceed anonymously, "[t]hat bell cannot be unrung." *Doe v. Coll. of New Jersey*, 997 F.3d 489, 494 (3d Cir. 2021). When the court sustains pseudonymity, the issue still can be addressed on a post-judgment appeal. *See, e.g.*, *Doe v. Pub. Citizen*, 749 F.3d 246, 273–75 (4th Cir. 2014). Because the safeguards imposed by the Protective Order are not "effectively unreviewable on appeal from the final judgment," the

10

collateral order doctrine does not apply. *Mohawk Indus.*, 558 U.S. at 106 (quotation marks omitted).

Undeterred, Appellants try (at 12) to conjure up "irreparable harm" by claiming the Protective Order "interfer[es] with their ability fairly to litigate the case" and "constrain[s] their First Amendment right to speak out on important matters of public concern." These attempts fall short. As the district court noted, Appellants' assertions of hardship caused by the Protective Order are unfounded. *See supra* at 2 & n.1. And nothing in the Protective Order prevents Appellants from speaking publicly about "matters" related to the litigation; it simply "limits [Appellants'] identification of Plaintiffs as such—*Plaintiffs in this case*—as well as identification of Plaintiffs' family members." JA326 n.12.

The Contempt Order's analysis proves the point. Appellants were not required to show cause because they "spoke out" about their side of the story. If simply "speaking out" were enough to violate the Protective Order, Joshua and Stephanie Mast's interview on national television would have constituted a violation. *But see* JA328–29 (finding the evidence insufficient to prove Joshua and Stephanie Mast knowingly violated the Protective Order). Instead, Joshua Mast's conduct

11

implicated the Protective Order when he and his brother Jonathan publicized the identity of Baby Doe in connection with this case. *See* JA329–30, JA334–35. The Protective Order prohibits no one from speaking publicly about the case.

### III. Mandamus is inappropriate here.

Left with only the possibility of mandamus, Appellants repeat "gag order"—like magic words that somehow unlock the Court's jurisdiction. But as the Does have repeatedly shown, the Protective Order is not a gag order. *See supra* 8–9; Mot. 22–24; Appellees' Br. 45–47.

The Protective Order lawfully permits the Does to litigate using pseudonyms and imposes corollary provisions designed to protect that right, and nothing more. Such a decision is committed to the discretion of the district court. *See James*, 6 F.3d at 238 (pseudonymity orders); *M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 163 (4th Cir. 1992) (en banc) (protective orders). Appellants dispute the district court's decision below, but mandamus is not available "when the most that could be claimed is that the district courts have erred in ruling on matters within their jurisdiction." *Schlagenhauf v. Holder*, 379 U.S. 104, 112 (1964) (quotation marks omitted). Because that decision

12

can be reviewed on appeal from final judgment, the Court should not use mandamus here. *See In re Braxton*, 258 F.3d 250, 261 (4th Cir. 2001).

## CONCLUSION

For all these reasons, and those discussed in the Does' Motion to Dismiss for Lack of Jurisdiction, the Court should dismiss this appeal.

January 21, 2025                     Respectfully submitted,

/s/ *Kevin S. Elliker*

Maya M. Eckstein
Lewis F. Powell III
Kevin S. Elliker
HUNTON ANDREWS KURTH LLP
951 E. Byrd Street
Richmond, VA 23219
(804) 788-8200
meckstein@hunton.com
lpowell@hunton.com
kelliker@hunton.com

Brittany M.J. Record
Ehson Kashfipour
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
Telephone: (202) 637-2200
brittany.record@lw.com
ehson.kashfipour@lw.com

Blair Connelly
Zachary Rowen
LATHAM & WATKINS LLP
1271 Avenue of the Americas

13

New York, NY 10029<br>
Telephone: (212) 906-1200<br>
blair.connelly@lw.com<br>
zachary.rowen@lw.com

*Counsel for Appellees*

## CERTIFICATE OF COMPLIANCE

I certify that this motion complies with the word limitation of Fed. R. App. P. 27(d)(2) because the portion of the motion subject to that rule is 2,575 words and therefore does not exceed the 2,600-word limit.

I further certify that the motion complies with the typeface and type style requirements of Fed. R. App. P. 27(d)(1)(E), Fed. R. App. P. 32(a)(5), and Fed. R. App. P. 32(a)(6) because this motion has been prepared in 14-point Century Schoolbook typeface using Microsoft Word.

<i>/s/ Kevin S. Elliker</i><br>
Kevin S. Elliker

## CERTIFICATE OF SERVICE

I certify that the foregoing has been filed on this 21st day of January, 2025, using the Court's CM/ECF system, which will serve notice on all counsel of record.

<i>/s/ Kevin S. Elliker</i><br>
Kevin S. Elliker