139 F.4th 329
United States Court of Appeals, Fourth Circuit.

Lolakshi KALE; Gurusaday Dey, Plaintiffs - Appellants,
v.
Angelica ALFONSO-ROYALS, Acting Director, U.S. Citizenship and Immigration Services; Marco Rubio, Secretary, U.S. Department of State, Defendants – Appellees.

No. 23-1799
|
Argued: March 21, 2025
|
Decided: June 3, 2025

**Synopsis**
**Background:** Applicants for adjustment of status brought action alleging that United States Citizenship & Immigration Services' (USCIS) decision to hold their applications in abeyance until visa number became available violated Administrative Procedure Act (APA). The United States District Court for the Eastern District of North Carolina, Louise W. Flanagan, J., 2023 WL 4939367, dismissed complaint, and applicants appealed.

**[Holding:]** The Court of Appeals, Gregory, Circuit Judge, held that as matter of first impression, USCIS policy to hold applications for adjustment of status in abeyance until visa number became available was not subject to judicial review.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion to Dismiss for Lack of Subject Matter Jurisdiction.

West Headnotes (8)

[1] **Federal Courts** Jurisdiction

When district court dismisses complaint for lack of subject matter jurisdiction, Court of Appeals reviews its legal conclusions de novo. Fed. R. Civ. P. 12(b)(1).

[2] **Federal Courts** Necessity of Objection; Power and Duty of Court

Federal court cannot proceed to merits of any case before determining that it has jurisdiction.

[3] **Federal Courts** Determination of question of jurisdiction

Even in situations featuring difficult jurisdictional questions, Court of Appeals cannot assume jurisdiction to instead resolve easier merits issues.

[4] **Administrative Law and Procedure** Presumptions as to Reviewability
**Administrative Law and Procedure** Rebuttal of presumptions

When determining whether statute deprives it of jurisdiction, federal court applies well-settled and strong presumption that when statutory provision is reasonably susceptible to divergent interpretation, court adopts reading that accords with traditional understandings and basic principles—that executive determinations generally are subject to judicial review—and thus presumption can only be overcome by clear and convincing evidence of congressional intent to preclude judicial review.

[5] **Aliens, Immigration, and Citizenship** Judicial review and intervention

United States Citizenship and Immigration Services' (USCIS) policy to hold applications for adjustment of status in abeyance until visa number became available was "decision or action" specified to be in Attorney General's discretion, and thus applicants' claim that policy violated Administrative Procedure Act (APA) fell within scope of Immigration and Nationality Act's (INA) jurisdiction-stripping provision; USCIS devised, within its explicit statutory discretion and in compliance with several potentially conflicting statutes, system such that when visa number was

not immediately available to applicant due to retrogression, it would place application in adjudication hold. Immigration and Nationality Act §§ 242, 245, 8 U.S.C.A. §§ 1252(a)(2)(B)(ii), 1255(a); 8 C.F.R. § 245.1(g)(1).

More cases on this issue

[6] Evidence Facts in general
Federal Courts Matters appearing otherwise than by record in general;  judicial notice

An appellate court can take judicial notice of the same facts as could the district court; however, an appellate court must be mindful that judicial notice must not be used to upset the procedural rights of litigants to present evidence on disputed matters. Fed. R. Evid. 201(d).

[7] Evidence Administrative proceedings and acts
Evidence Official Opinions, Guidelines, and Policy Statements
Evidence As establishing truth of facts or matters noticed in general

While Court of Appeals would take judicial notice of existence of 73-pages of documents attached to supplemental brief, which was a mix of immigration agency decisions and a lengthy United States Citizenship & Immigration Services (USCIS) training presentation produced in unrelated litigation, it would not take notice of any purported facts within them, in action brought against USCIS by asylum applicants, alleging the decision to hold their applications in abeyance until visa number became available violated the Administrative Procedure Act (APA); purported facts within documents were plainly disputed and not noticeable. 5 U.S.C.A. § 551 et seq.; Fed. R. Evid. 201(b)(2).

More cases on this issue

[8] Evidence Material from Other Cases

Just because a document is on the public docket in another case does not make it proper to introduce into the record through judicial notice before any federal court at any time. Fed. R. Evid. 201(b)(2).

***

*330 Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Louise W. Flanagan, District Judge. (5:22-cv-00338-FL)

**Attorneys and Law Firms**

ARGUED: Bradley Bruce Banias, BANIAS LAW, LLC, Charleston, South Carolina, for Appellants. Alexandra Bridget McTague, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. ON BRIEF: Yaakov M. Roth, Acting Assistant Attorney General, Brian M. Boynton, Principal Deputy Assistant Attorney General, William C. Peachey, Director, Glenn M. Girdharry, Assistant Director, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

Before KING, GREGORY, and HEYTENS, Circuit Judges.

**Opinion**

Affirmed by published opinion. Judge Gregory wrote the opinion, in which Judge King and Judge Heytens joined.

GREGORY, Circuit Judge:

*331 Lalakshi Kale and his wife, Gurusaday Dey, challenge the United States Citizenship & Immigration Services ("USCIS")'s policies for managing visa supply and demand as violative of the Administrative Procedure Act ("APA"). Specifically, they allege that USCIS's decision to hold their adjustment of status applications in abeyance until a visa number comes available constitutes unlawful withholding and unreasonable delay, and they seek mandamus ordering the agency to adjudicate their visa application at once.

This case concerns a question confronted by several of our sister circuits: Whether 8 U.S.C. § 1252(a)(2)(B)(ii) deprives federal courts of jurisdiction over challenges to USCIS's adjudication hold policy regarding final action date retrogression for adjustment of status applications. We join the Third, Fifth, Eighth, and Eleventh circuits in finding that it does and, accordingly, affirm the judgment of the district court dismissing this action for lack of jurisdiction.[1]

---

[1] Because we find that 8 U.S.C. § 1252(a)(2)(B)(ii) precludes judicial review of USCIS's adjudication hold policy, we need not reach the district court's alternative basis for dismissal under the APA pursuant to 5 U.S.C § 701(a)(2).

I.

Kale is an Indian national and has resided in the United States since 2009. J.A. 6, 18. He and his wife, also an Indian national, attempted to obtain legal permanent residence (colloquially known as "green cards") based on his permanent employment. *See* J.A. 18–19. As such, they applied to USCIS for "adjustment of status" in 2022. J.A. 20–21. "This generally entails a three-step process: (1) the employer files an application for a labor certification with the Department of Labor; (2) if the application is approved, the employer files a Form I-140 visa petition with USCIS on the noncitizen's behalf; and (3) if the Form I-140 petition is approved, the noncitizen files a Form I-485 application for adjustment of status." *Kanapuram v. Dir., USCIS*, 131 F.4th 1302, 1304–05 (11th Cir. 2025). Kale's employer had filed for a permanent labor certification on August 26, 2014, making that the "priority date" for his adjustment of status application. J.A. 18–19. Dey, as Kale's wife, has the same priority date for her application.

By statute, Congress charged USCIS with administering these visa applications in accordance with certain statutory limits. USCIS adjusts the status of immigrant-applicants pursuant to 8 U.S.C. § 1255, which provides:

> The status of an alien who was inspected and admitted or paroled into the United States ... may be adjusted by the Attorney General, *in his discretion and under such regulations as he may prescribe*, **\*332** to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a) (emphasis added).

While the number of visas issued is fixed by statute, demand for those visas is not. As such, the "Department of State 'may make reasonable estimates of the anticipated numbers of visas to be issued' within each category for each fiscal year and 'rely upon such estimates in authorizing the issuance of visas.'" *Kanapuram*, 131 F.4th at 1305 (citing 8 U.S.C. § 1153(g)). The Department issues a monthly bulletin estimating visa availability based on priority date. *See* U.S. Dep't of State, Bureau of Consular Affs., *The Visa Bulletin*, https://www.travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin.html [https://perma.cc/3F87-FYPH (last accessed May 20, 2025)]. Applicants can only file their application with USCIS when their priority date is "current," meaning either immigrant visa numbers are immediately available to all, or the applicant's priority date is earlier than the applicable cutoff date listed on the Visa Bulletin. *See* 8 C.F.R. § 245.1(g)(1) (2024).

All this works seamlessly when USCIS's estimate for applications is accurate or overly cautious. However, sometimes demand is higher than predicted, making a given visa category "oversubscribed." *See Li v. Kerry*, 710 F.3d 995, 997–98 (9th Cir. 2013). This requires the government to push back the cut-off date to stay within the statutory limits set by Congress, a process known as "retrogression." *See* U.S. Citizenship & Immigr. Servs., *Visa Retrogression*, https://www.uscis.gov/green-card/green-card-processes-and-procedures/visa-availability-priority-dates/visa-retrogression [https://perma.cc/7CUH-FS9X (last accessed May 20, 2025)]. As the government explained before the district court, "[t]he cut-off date is the priority date (the date upon which the underlying labor certification application was accepted for processing by the Department of Labor ...) of the first applicant who could not be accommodated for a visa number." J.A. 43 (citing Parker Decl. (DE 17-1) ¶ 12; 8 C.F.R. § 204.5(d)). It provided an example as follows:

> [I]f there are 3,000 visa numbers available for [certain visa applicants] and USCIS and DOS have demand from 8,000 applicants, then DOS needs to establish a cutoff date so that only 3,000 visa numbers would be allocated. The cut-off is the priority date of the 3001st applicant. Only persons with a priority date earlier than the cut-off date for their country/category have a visa available and may be approved for adjustment of

status or issued an immigrant visa in a family-sponsored or employment-based preference category.

*Id.* This cut-off date is also referred to as the "final action date."

As noted above, Kale and Dey (hereafter "Appellants") had priority dates of August 26, 2014. J.A. 18–19. In September 2022, these dates were considered "current" because the estimated final action date was December 1, 2014, and, accordingly, they were allowed to file applications for adjustment of status. *See* U.S. Dep't of State, Bureau of Consular Affs., *Visa Bulletin for September 2022*, https://www.travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2022/visa-bulletin-for-september-2022.html [https://perma.cc/64QF-8F6E (last accessed May 20, 2025)]; J.A. 21. However, demand was higher than forecasted, and there were more applicants **\*333** than available visas. This resulted in retrogression: the final action date was moved back to April 1, 2012. *See* U.S. Dep't of State, Bureau of Consular Affs., *Visa Bulletin for October 2022* ("October Visa Bulletin"), https://www.travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2023/visa-bulletin-for-october-2022.html [https://perma.cc/7ZN8-D85W (last accessed May 20, 2025)]. As the State Department explained:

> Rapid forward movements of the India E2 final action and application filing dates during FY-2022 were made to maximize number use under the unprecedented high employment limit of 281,507. As a result, heavy applicant demand has materialized and coupled with significantly lower visa number availability for India E2 for FY-2023 as compared to FY-2022, corrective action was required to keep number use within the maximum allowed under the FY-2023 annual limits.

*Id.* In other words, USCIS could not approve all the filed applications until more visas became available in future years, and the final action date was shifted to keep within the visa limits set by Congress.

Appellants are not the only applicants impacted by retrogression, nor is this the first time that retrogression has happened. As a result, USCIS has adopted an "Adjudication Hold Policy" to hold applications in abeyance when they were current at the time of filing but can no longer be granted due to retrogression of the final action date. *See Kanapuram*, 131 F.4th at 1305 (citing U.S. Citizenship & Immigration Servs. Policy Manual, at Vol. 7, Pt. A, Ch. 6(C)(5) (2025), https://www.uscis.gov/policy-manual/volume-7-part-a-chapter-6 [https://perma.cc/7Y2N-DV65 (last accessed May 20, 2025)]). Having an application held in abeyance triggers eligibility to apply for other benefits, similar to those provided by permanent residence. *See, e.g.*, U.S. Citizenship & Immigration Servs. Policy Manual, at Vol. 7, Pt. B, Ch. 3 n.17 (2025), https://www.uscis.gov/policy-manual/volume-7-part-b-chapter-3#footnotelink-17 [https://perma.cc/FKK2-WZLV (last accessed May 20, 2025)] (ability to remain present in U.S. for period of authorized stay); 8 C.F.R. § 274a.12(c)(9) (2025) (ability to continue employment in the U.S.); 8 U.S.C. §§ 1154(j), 1182(a)(5)(A)(iv) (ability to apply to switch employers or work for a different employer while application from prior employer remains pending); 8 C.F.R. § 245.2(a)(4)(ii) (2011) (ability to apply for foreign travel authorization). When the initial estimate is only slightly off, this minor delay is less problematic. But, as in this case, where demand significantly exceeds supply, applications can remain pending for years without a determination.

Appellants grew tired of waiting and filed the action before us. In their October 28, 2022, Amended Complaint, they brought three claims: two against USCIS and one against the State Department. J.A. 24–26. The government moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1), arguing that the district court lacked jurisdiction. J.A. 3, 39. The district court agreed, finding it lacked jurisdiction over the case under the jurisdiction-stripping provision of 8 U.S.C. § 1252(a)(2)(B)(ii), or in the alternative under 5 U.S.C § 701(a)(2), and dismissed the case. J.A. 39–52. Kale and Dey timely appealed. J.A. 53.

II.

[1] [2] [3] When a district court dismisses a complaint pursuant to Rule 12(b)(1), we review its legal conclusions de novo. *Lovo v. Miller*, 107 F.4th 199, 205 (4th Cir. 2024). We cannot proceed to the merits of any case before determining that we have **\*334** jurisdiction. Even in situations featuring difficult jurisdictional questions, we cannot "assume" jurisdiction to

instead resolve easier merits issues. *See Waleski v. Montgomery, McCracken, Walker & Rhoads, LLP*, —— U.S. ——, 143 S. Ct. 2027, 216 L.Ed.2d 1250, reh'g denied, —— U.S. ——, 144 S. Ct. 53, 216 L.Ed.2d 1309 (2023) (Thomas, J. dissenting from the denial of cert).[2]

[2] There is an "entrenched Circuit split" on the validity of hypothetical jurisdiction with respect to "statutory" limits on our jurisdiction. *Waleski*, 143 S. Ct. at 2028; *See also Gupta v. Jaddou*, 118 F.4th 475, 482 (1st Cir. 2024) (Proceeding directly to the merits after "assum[ing] there [were] no statutory bars to the exercise of jurisdiction" because the court "resolve[d] the merits in the defendants' favor."). In our view, the Supreme Court has expressly foreclosed this avenue. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–95, 101, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). Thus, unlike the First Circuit, we decline to reach the merits, having found that we lack the authority to speak on the matter.

[4] "When determining whether a statute deprives us of jurisdiction, we apply the 'well-settled and strong presumption [that] when a statutory provision is reasonably susceptible to divergent interpretation, we adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review.' " *Lovo*, 107 F.4th at 206 (quoting *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229, 140 S.Ct. 1062, 206 L.Ed.2d 271 (2020)). "The presumption can only be overcome by clear and convincing evidence of congressional intent to preclude judicial review." *Id.* (internal citations omitted).

III.

[5] The Immigration and Nationality Act deprives courts of "jurisdiction to review ... any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified ... to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). As explained below, we find that implementation of USCIS's adjudication hold policy is a "decision or action" that is specified "to be in the discretion" of the Attorney General" by 8 U.S.C. § 1255(a), such that this jurisdiction-stripping provision is satisfied. Therefore, we hold that we lack jurisdiction to consider Appellants' claims.

In *Shaiban v. Jaddou*, we were asked to determine the scope of this very jurisdiction-stripping statute. *See* 97 F.4th 263, 266 (4th Cir. 2024). There, we were faced with a denial of adjustment of status for having engaged in terrorist activity under 8 U.S.C. § 1159(b), which dictates that "the Secretary of Homeland Security or the Attorney General *may* adjust the status of a foreign national granted asylum in the Secretary's or the Attorney General's discretion." *Id.* (cleaned up) (emphasis in original). We held that § 1252(a)(2)(B)(ii) precluded review of the decision because Congress placed the adjustment of status within Attorney General's discretion. *See id.* We explained that "Section 1159(b) is explicit that it is in the discretion of the Attorney General whether to grant an adjustment of status. Therefore, a plain reading of the statutes leads us to conclude Congress did not intend judicial review of a claim like [the plaintiff's]." *Id.* In other words, *Shaiban* requires us to ask whether the substantive statute itself defines USCIS's exercised authority as "discretionary;" if so, we lack jurisdiction under § 1252(a)(2)(B)(ii). *Id.* at 267.

However, as noted above, this jurisdiction-stripping statute requires more than just the grant of discretion to be triggered. The challenge must also be to a **\*335** "decision or action." 8 U.S.C. § 1252(a)(2)(B)(ii). As we explained when confronted with a similar jurisdiction-stripping statute, agency *inaction* is not to be conflated with *action*. *See Lovo*, 107 F.4th at 210 (discussing 8 U.S.C. § 1252(a)(2)(B)(i)). In *Lovo v. Miller*, we held that "high-level" and "hidden policy choices" leading to an agency's *failure* to act did not constitute a "decision or action" within the meaning of 8 U.S.C. § 1182(a)(9)(B)(v). *Id.* Therefore, we found that the jurisdiction-stripping provision at issue in that case did not apply to a challenge to that inaction. Thus, there is persuasive authority that mere inaction is insufficient to constitute a "decision or action" under the similar language of 8 U.S.C. § 1252(a)(2)(B)(ii).

Here, we ultimately find that USCIS's adjudication hold policy is a (1) "decision or action" that is (2) "committed to the discretion of the Attorney General of Secretary of Homeland Security." To start, this case differs from *Lovo* because it is not merely a case of agency inaction. USCIS devised, within its explicit statutory discretion and in

compliance with several potentially conflicting statutes, a system such that when a visa number is not immediately available to an applicant due to retrogression, it would place the application in an adjudication hold. *See* U.S. Citizenship & Immigration Servs., *Policy Manual*, Vol. 7, Pt. A, Ch. 6(C)(5) (2025), https://www.uscis.gov/policy-manual/volume-7-part-a-chapter-6 [https://perma.cc/EFE9-ECQF (last accessed May 20, 2025)]. USCIS made an additional decision to apply this policy to Appellants' applications until a visa number becomes available. And this decision was but one choice available to USCIS, with the other option being to deny their applications outright and require them to refile once their priority dates became current. *See* 8 U.S.C. § 1153(e); 8 U.S.C. § 1255(e); 8 C.F.R. § 245.2(a)(5)(ii) (2011). Thus, unlike in *Lovo*, USCIS made several "decisions" within its discretionary authority in adjudicating these applications.

The statutory authority conferred upon the agency is also significant. *See* 8 U.S.C. § 1255(a) (The Attorney General may adjust status "*in his discretion and under such regulations as he may prescribe.*") (emphasis added). Here, USCIS is not only granted discretion with respect to the ultimate decision on whether to grant adjustment of status. USCIS also has the discretion to "prescribe" the regulations that guide its exercise of the discretionary authority. *See Geda v. Dir., USCIS*, 126 F.4th 835, 844 (3d Cir. 2025) (citing 8 U.S.C. § 1255(a)). Thus, the establishment of regulations and procedures for managing several competing statutory requirements—including the establishment of the adjudication hold policy—is plainly within the statutory grant of discretion. *See Shaiban*, 97 F.4th at 266. Furthermore, we see no reason to treat the several explicit and discretionary steps taken by USCIS as inaction.

Our decision today is in accordance with the findings of every Court of Appeals to reach this exact question. The Third, Fifth, Eighth, and Eleventh Circuits have all found that "[t]he text of § 1252(a)(2)(B)(ii) and § 1255(a)" provide the requisite "evidence that Congress intended to preclude judicial review of the Attorney General's discretionary decisions about the status adjustment process under § 1255(a), like the Adjudication Hold Policy." *Thigulla v. Jaddou*, 94 F.4th 770, 776–78 (8th Cir. 2024); *see also Geda*, 126 F.4th at 844; *Cheejati v. Blinken*, 106 F.4th 388, 394–96 (5th Cir. 2024); *Kanapuram*, 131 F.4th at 1306–07. As the Third Circuit explained:

> We are presented with a discretion-granting statute that explicitly provides **\*336** the Secretary the discretion to "prescribe" the regulations that guide its exercise of the discretionary authority. 8 U.S.C. § 1255(a). Thus, we lack jurisdiction to review both the decision to put the [the plaintiffs'] applications on hold and the "inextricably intertwined" process "prescribed" by the Secretary for reaching that decision.

*Geda*, 126 F.4th at 844. Similarly, the Fifth Circuit found § 1255(a) to provide for discretion for the ultimate decision as well as the process for reaching that decision, meaning the entire retrogression system is immune from review. *Cheejati*, 106 F.4th at 394. And the Eighth Circuit noted that "while Congress did not mandate the Adjudication Hold Policy (even though it did in the past), under the clear text of § 1255(a), Congress left such a policy to the discretion of the [Secretary]." *Thigulla*, 94 F.4th at 777; *see also Kanapuram*, 131 F.4th at 1306–07 (noting "agree[ment]" with "sister circuits" in "nearly identical cases.").

Like our sister circuits, we agree that 8 U.S.C. § 1255 confers discretionary authority on USCIS to establish procedures for adjudicating adjustment of status applications, which constitutes an agency "decision" or "action." As a result, a challenge to the procedures chosen and implemented by USCIS "cannot be reviewed by federal courts." *Cheejati*, 106 F.4th at 394 (citing 8 U.S.C. § 1252(a)(2)(B)(ii), 1255).[3]

[3] As at least one of our sister circuits has noted, this opinion does not foreclose the possibility of a challenge to USCIS's failure to comply with its own regulations, as an agency lacks discretion to disobey regulations even if it has the discretion to create those regulations in the first place. *See Kanapuram*, 131 F.4th at 1308.

IV.

[6] [7] [8] While we understand the frustration of Appellants and those similarly waiting for visa approval, we lack

jurisdiction to hear this case.[4] Based on the foregoing, the judgment of the district court is

extent Appellants seek notice of the existence of these documents, such notice is taken. But we decline to take notice of any of the underlying facts included within these documents.

*AFFIRMED.*

**All Citations**

139 F.4th 329

---

[4] While not relevant to our disposition of this matter, we must also address Appellees' motion to strike the improper supplementation of the record by Appellants' counsel. We treat Appellants' efforts to supplement the record as a motion for judicial notice.

Under the Federal Rules of Evidence, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). If a party requests judicial notice "and the court is supplied with the necessary information," the Court "must take judicial notice." *Id.* 201(c)(2). The Rules clarify that "[t]he court may take judicial notice at any stage of the proceeding." *Id.* 201(d). So, "an appellate court can take judicial notice of the same facts as could the district court." *Megaro v. McCollum*, 66 F.4th 151, 158 (4th Cir. 2023) (citation omitted). However, we must be "mindful that judicial notice must not be used ... [to] upset the procedural rights of litigants to present evidence on disputed matters." *Goldfarb v. Mayor of Balt.*, 791 F.3d 500, 511 (4th Cir. 2015) (quotations and citation omitted).

Counsel for Appellants attached seventy-three pages of documents to their supplemental brief, appearing to be a mix of immigration agency decisions and a lengthy USCIS training presentation produced in unrelated litigation. *See* Supp. Br. of Appellants at 10–82. While we can take notice of the existence of these documents, any facts within them are plainly disputed and not noticeable. Just because a document is on the public docket in another case, *see* Resp. to Mot. to Strike at 7, does not make it proper to introduce into the record before any federal court at any time, *see United States v. Awni Shauaib Zayyad*, 741 F.3d 452, 463–64 (4th Cir. 2014) (declining to take notice of facts introduced at a separate trial, as they do not constitute "indisputable facts" that would be thus "susceptible to judicial notice"). To the