24-1900

———————————

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

———————————

Baby Doe et al.,
*Plaintiffs-Appellees*

v.

Joshua Mast et al.,
*Defendants-Appellants*

———————————

Appeal from the United States District Court
for the Western District of Virginia
Hon. Norman K. Moon
No. 3:22-cv-00049

———————————

**PETITION FOR REHEARING EN BANC AND PANEL REHEARING**

———————————

David Eliezer Yerushalmi
American Freedom Law Center
2020 Pennsylvania Avenue, NW,
  Suite 189
Washington, DC 20006
Tel: (646) 262-0500

John S. Moran
McGuireWoods LLP
888 16th Street, NW,
  Suite 500
Washington, DC 20006
Tel: (202) 525-0356

*Counsel for Defendants-Appellants*

# TABLE OF CONTENTS

**Page**

STATEMENT UNDER APPELLATE RULE 40(b) & LOCAL RULE 40(b) ........1

INTRODUCTION ..............................................................................................2

BACKGROUND ...............................................................................................4

ARGUMENT ....................................................................................................6

    A. The panel erred in affirming on a *sua sponte* rationale neither advanced by the Does nor relied upon by the district court ..................................................7

    B. Even assuming the correctness of the panel's identified compelling interest, the proper disposition was remand, not affirmance ......................................11

    C. The panel's decision involves questions of exceptional importance that justify rehearing ..................................................................................15

CONCLUSION ................................................................................................17

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adarand Constructors, Inc. v. Pena*,
  515 U.S. 200 (1995) ...................................................................1, 6

*Agudath Israel of Am. v. Cuomo*,
  983 F.3d 620 (2d Cir. 2020) ...................................................... 1, 6, 14

*Bantam Books, Inc. v. Sullivan*,
  372 U.S. 58 (1963) ...................................................................15

*C.I.A. v. Sims*,
  471 U.S. 159 (1985) ...................................................... 10, 16

*Cutter v. Wilkinson*,
  544 U.S. 709 (2005) ...................................................................8

*Doe v. Mast*,
  745 F. Supp. 3d 399 (W.D. Va. 2024)...................................................10

*Edgar v. Haines*,
  2 F.4th 298 (4th Cir. 2021)...................................................10

*Greenlaw v. United States*,
  554 U.S. 237 (2008) ...................................................................7

*Haig v. Agee*,
  453 U.S. 280 (1981) ...................................................... 10, 16

*Hulsey v. Cisa*,
  947 F.3d 246 (4th Cir. 2020) ...................................................8

*Long v. Bondi*,
  151 F.4th 503 (4th Cir. 2025)...................................................8

*Mast v. A.A.*,
  925 S.E.2d 665 (Va. 2026) ...................................................4

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983) ........................................................................................2

*N.Y. Times Co. v. United States,*
    403 U.S. 713 (1971) (*per curiam*) ...........................................................9

*Nebraska Press Ass'n v. Stuart,*
    427 U.S. 539 (1976) .....................................................................................15

*Pullman-Standard v. Swint,*
    456 U.S. 273 (1982) ............................................................................... 13–14

*Real Alternatives, Inc. v. Sec'y Dep't of Health & Hum. Servs.,*
    867 F.3d 338 (3d Cir. 2017) ................................................................. 1, 14

*Singleton v. Wulff,*
    428 U.S. 106 (1976) ................................................................................. 8, 14

*Snepp v. United States,*
    444 U.S. 507 (1980) .............................................................................. 10, 16

*Tederick v. LoanCare, LLC,*
    168 F.4th 154 (4th Cir. 2026) ....................................................................8

*United States v. Sineneng-Smith,*
    590 U.S. 371 (2020) ...................................................................................1, 7

*United States v. Smith,*
    780 F.2d 1102 (4th Cir. 1985) .................................................................10

*United States v. Virginia,*
    518 U.S. 515 (1996) ......................................................................................1

*United States v. Zubaydah,*
    595 U.S. 195 (2022) .....................................................................................10

*Zivotofsky ex rel. Zivotofsky v. Clinton,*
    566 U.S. 189 (2012) .....................................................................................14

iii

**STATEMENT UNDER APPELLATE RULE 40(b) & LOCAL RULE 40(b)**

In the judgment of the undersigned counsel, rehearing is warranted for several reasons.

First, the panel's decision conflicts with decisions of the United States Supreme Court. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020) ("In our adversarial system of adjudication, we follow the principle of party presentation. . . . [A]s a general rule, our system is designed around the premise that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.") (citation altered); *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 238–39 (1995) (concluding, after holding that strict scrutiny is the applicable legal standard, that "[t]he question whether any of the ways in which the Government uses subcontractor compensation clauses can survive strict scrutiny . . . should be addressed in the first instance by the lower courts").

Second, the panel's decision conflicts with authoritative decisions of other United States Courts of Appeals. *See Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 633 (2d Cir. 2020) ("The government's justification 'must be genuine, not hypothesized or invented *post hoc* in response to litigation.'") (quoting *United States v. Virginia*, 518 U.S. 515, 533 (1996)); *Real Alternatives, Inc. v. Sec'y Dep't of Health & Hum. Servs.*, 867 F.3d 338, 387 n.35 (3d Cir. 2017) ("In a strict scrutiny

analysis, we ordinarily reject '*post hoc* rationalizations' for government action and instead rely on the 'basis [for the regulation] articulated by the agency itself.'") (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983).

Third, the panel's decision involves one or more questions of exceptional importance, namely whether a district court's prior restraint may be upheld based on a compelling interest that the district court never articulated and which the party seeking the prior restraint never argued.

## INTRODUCTION

Defendants–Appellants Joshua Mast, Stephanie Mast, and Richard Mast (collectively, "the Masts") respectfully petition for rehearing *en banc* or, alternatively, for rehearing by the panel. The panel's April 22, 2026 decision affirmed a prior restraint on the Masts' speech—a restraint that forbids them from disclosing any information that directly or indirectly identifies Plaintiffs or their family members to any person unless that person first executes a non-disclosure agreement. The panel correctly held that the protective order constitutes a content-based prior restraint subject to strict scrutiny. Yet the panel sustained the order on a rationale never advanced by the Does and never relied upon by the district court: that the United States has a compelling governmental interest in protecting the confidentiality of foreign nationals perceived as American collaborators so as to

2

preserve the Nation's ability to recruit intelligence assets abroad. Remarkably, the United States, despite its officials being named parties at the outset of the case, has never asserted this interest on its own behalf.

At most, the panel should have held that strict scrutiny applied and remanded to the district court to apply that standard in the first instance. That would have allowed the parties to submit relevant evidence and for the Masts to address this new national-security rationale on the merits. The panel may ultimately be right that this national-security rationale is compelling, but it was the panel's own suggestion. This was not the rationale the Does articulated in seeking the prior restraint, nor what the district court relied on to impose it. Under well-established principles of party presentation and the application of strict scrutiny, the panel should not have relied on this alternative rationale to affirm the prior restraint—and in any event, should not have done so without further adversarial proceedings.

The panel's approach of substituting its own rationale that neither the parties nor the district court had contemplated was improper. Rehearing is thus warranted because the panel's decision conflicts with established principles of appellate review prohibiting courts of appeals from affirming on theories not presented by the parties or relied upon below, particularly in the context of fact-intensive constitutional inquiries under strict scrutiny, and involves a question of exceptional importance

3

regarding the permissible scope of judicial prior restraints on speech and the proper role of an appellate court in resolving First Amendment claims under strict scrutiny.

## BACKGROUND

In September 2019, an infant girl (Baby Doe) was orphaned during a joint U.S.-Afghan military operation in Afghanistan. Major Joshua Mast and his wife Stephanie began custody proceedings and obtained an adoption order in Virginia, finalized in December 2020. The Supreme Court of Virginia recently upheld that adoption and ruled that plaintiffs were statutorily barred from challenging the adoption, directly or indirectly, under Virginia Code § 63.2-1216. *See Mast v. A.A.*, 925 S.E.2d 665 (Va. 2026).

Nevertheless, in September 2022, the Does brought this federal suit against the Masts and others, and simultaneously moved for a protective order prohibiting Defendants from publicly disclosing the Does' identities. The district court granted the protective order *ex parte* in September 2022. The protective order provides that

> The Defendants and their counsel and representatives are prohibited from disclosing any information that directly or indirectly identifies Plaintiffs and their family members to any person . . . unless that person first executes a non-disclosure agreement enforceable through the contempt sanction.

Despite their desire for anonymity, the Does engaged with the media, naming the Masts and publicizing their side of the story. The Masts filed motions to vacate or modify the order. On August 16, 2024, the district court denied the motions and held

4

Joshua Mast in civil contempt for sharing a photograph of his adoptive daughter with a non-profit organization. The Masts timely appealed the denial of the motions to lift the order.[1]

On April 22, 2026, a divided panel affirmed. Judge Richardson, writing for the majority and joined by Chief Judge Diaz, held that the protective order is a content-based prior restraint but survives strict scrutiny because it serves the Federal Government's compelling interest in national security—specifically, the interest in protecting foreign nationals perceived as U.S. collaborators to maintain the credibility necessary for future intelligence recruitment. In applying strict scrutiny, the panel acknowledged that "the district court framed the relevant compelling interest as the personal safety of the Does and their family members in Afghanistan," Op. 20, n. 15, which the panel did not rely on. Instead, the panel substituted its own rationale for the prior restraint, concluding that the district court's "undisputed factual findings also implicate the government's compelling interest in national security." *Id*. Judge King dissented on jurisdictional grounds, concluding the court lacked appellate jurisdiction; the majority disagreed.

---

[1] An appeal of the contempt portion of the order would not have been timely and still would not be because the district court has not imposed any sanction. To be clear, the contempt finding involved indirect identification of the Masts' adoptive daughter through sharing a photograph, not identification of John or Jane Doe.

## ARGUMENT

The Court should grant rehearing, either *en banc* or by the panel, to ensure that the Masts' challenge to the district court's *ex parte* order are appropriately adjudicated and to avoid creating an unnecessary conflict between this Court's decision and decisions from the U.S. Supreme Court and other U.S. Courts of Appeals. The panel's decision to affirm on a *sua sponte* theory of compelling governmental interest—one never advanced by any party and never relied upon by the district court—conflicts with well-established principles of appellate adjudication.

The Court does not need to revisit the panel's decisions that there is appellate jurisdiction, that the order acts as a prior restraint, or that strict scrutiny applies. Nor does the Court need to reverse its decision and invalidate the order. Rather, under the logic of the Court's decision, and in line with well-established precedent on party presentation and the application of strict scrutiny, the appropriate course would be to hold that strict scrutiny applies, acknowledge that there *could* be a compelling interest in national security that might justify the order, and remand for the district court in the first instance to make a determination, based on an adversarial presentation by the parties, whether that interest in fact justifies the order here. *Cf. Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 238–39 (1995); *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 634 (2d Cir. 2020).

**A.** **The panel erred in affirming on a *sua sponte* rationale neither advanced by the Does nor relied upon by the district court.**

The panel erred in relying on a compelling-interest theory that no party advocated and the district court did not embrace. The panel acknowledged this explicitly, stating that "the district court framed the relevant compelling interest as the personal safety of the Does and their family members in Afghanistan," but then concluded on its own initiative that the district court's factual findings "also implicate the government's compelling interest in national security." Op. 20, n.15. This distinction is not merely semantic. The district court's rationale rested on the private safety of identified individuals—the Does and their family members. The panel's rationale rests on an entirely different theory: the United States government's institutional interest in maintaining the credibility of its assurances to foreign intelligence assets so as to facilitate future recruitment. These are categorically different interests, implicating different facts, different legal standards, and different parties.

The principle that a court of appeals should not affirm on grounds neither raised by the parties nor relied upon below is firmly established. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020); *Greenlaw v. United States*, 554 U.S. 237, 243 (2008) ("In our adversary system, . . . we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present."). This is a

7

corollary to "the general rule . . . that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). Among other things, these rules ensure that the opposing party has a fair and meaningful opportunity to present evidence and legal arguments. *See id*.

Even when an appellee expressly argues an alternative theory for affirmance that the district court did not rely on below, this Court routinely declines to address the issue in the first instance. *See, e.g.*, *Tederick v. LoanCare, LLC*, 168 F.4th 154, 173 (4th Cir. 2026) ("Given that we are a 'court of review, not of first view,' . . . we decline to affirm on [an alternative] basis, and thus leave that issue for the remand.") (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005)); *Long v. Bondi*, 151 F.4th 503, 519 (4th Cir. 2025) (""'It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.'" We see no reason to depart from that salutary practice here, where assessing the alternative ground 'would require extensive analysis of issues never addressed by the district court, which is better positioned to consider them in the first instance.'") (quoting *Hulsey v. Cisa*, 947 F.3d 246, 252 (4th Cir. 2020), in turn quoting *Singleton*, 428 U.S. at 120). There is all the more reason to follow that approach where the appellee did not argue the alternative theory in question and the appellant therefore lacked a meaningful opportunity to address it.

These principles carry special force in the First Amendment context. Where a content-based prior restraint is at issue, the burden lies squarely on the party defending the restraint to demonstrate that it satisfies strict scrutiny. *See N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971) (*per curiam*) (the party seeking a prior restraint "carries a heavy burden of showing justification for the imposition of such a restraint") (quotation omitted). The Does—the parties who sought and defended the protective order—never argued that the compelling interest supporting the order was the United States government's interest in protecting intelligence sources and maintaining future recruitment capacity. The United States Government itself never advocated for the order, even when federal officials were named defendants at the outset of the case. The Does instead argued that their personal safety and that of their family members justified the restraint, and the district court agreed with that framing.

By supplying a compelling-interest rationale that no party advanced, the panel effectively relieved the Does of their burden under strict scrutiny. It identified a governmental interest—intelligence recruitment credibility—that the Does never claimed to vindicate and that the district court never found to be at stake. The panel then conducted the strict-scrutiny analysis on this new theory without the benefit of adversarial testing. The Masts never had the opportunity to brief or argue against the

9

specific contention that this case implicates the Government's institutional interest in maintaining the appearance of confidentiality for foreign collaborators.

In support of its compelling-interest analysis, the panel cited a series of cases that all involved the United States Government as a party asserting its own national security interests. *See* Op. 16–17 (citing *United States v. Zubaydah*, 595 U.S. 195 (2022); *C.I.A. v. Sims*, 471 U.S. 159 (1985); *Haig v. Agee*, 453 U.S. 280 (1981); *Snepp v. United States*, 444 U.S. 507 (1980); *Edgar v. Haines*, 2 F.4th 298 (4th Cir. 2021); *United States v. Smith*, 780 F.2d 1102 (4th Cir. 1985)). The Masts never had an opportunity to address these cases, however, because neither the district nor the Does ever cited them. *Cf. Doe v. Mast*, 745 F. Supp. 3d 399, 409–416 (W.D. Va. 2024). If they had, the Masts would have noted, among other things, that these cases all involved the United States itself invoking the compelling interest, presenting evidence in support, and submitting to adversarial testing of its claims—none of which has happened here. The panel erred in extrapolating from these precedents to a case in which private litigants sought to restrain an opposing litigant's speech based on the alleged threat of personal harm.

The problem is compounded by the fact-intensive nature of the strict-scrutiny inquiry. Whether a compelling interest exists on these facts—whether the Does are genuinely perceived as U.S. collaborators, whether disclosure of their identities would meaningfully impair future intelligence recruitment, and whether the factual

10

record supports these conclusions—are determinations that require factual development and adversarial testing. The panel resolved these questions by pointing to circumstances in the record—such as the timing of the Does' evacuation during Operation Allies Refuge—that it found suggestive. But these inferences were never tested through briefing, argument, or district court factfinding directed to the specific question of whether the Government's intelligence-recruitment interest is implicated.

And the United States has not been asked nor had an informed opportunity to state its position on these issues either. The United States would at least have that opportunity if the Court were to remand for further proceedings rather than simply affirming the district court's prior restraint on a new alternative justification.

The Court should not, consistent with principles of party presentation and adversarial adjudication, sustain a prior restraint on speech under strict scrutiny based on a compelling-interest theory that was never advanced by the party defending the restraint, never presented to the district court, and never subjected to adversarial testing. The panel's departure from these principles warrants rehearing.

**B.    Even assuming the correctness of the panel's identified compelling interest, the proper disposition was remand, not affirmance.**

Even if this Court were to conclude that a compelling governmental interest in protecting perceived Afghan collaborators could potentially justify a prior restraint under the circumstances of this case, the proper course was not to affirm

11

outright but to remand to the district court. By affirming on a theory the district court never addressed, the panel deprived the parties—and particularly the Masts—of the district court's considered judgment on (a) whether the compelling interest the panel identified is in fact established on the record of this case, (b) whether the protective order as written is narrowly tailored to serve that specific interest, and (c) whether less restrictive alternatives exist to protect that specific interest.

The importance of remand is particularly acute here because of the disconnect between the interest the district court relied upon and the interest the panel supplied. The district court concluded that "disclosure of Plaintiffs' identities and identifying information would pose a substantial risk to the physical safety of Plaintiffs and other innocent third-parties." That is a finding directed at personal safety—not at the distinct question of whether the Government's intelligence apparatus and its capacity to recruit future assets would be impaired. The panel treated these as interchangeable, but they are not.

For example, the narrow-tailoring analysis may yield different results depending on which interest is being served. An order narrowly tailored to protect the personal safety of the Does and their family members might look quite different from an order narrowly tailored to protect the Government's institutional interest in maintaining the credibility of confidentiality assurances to potential foreign intelligence sources. The latter interest might be adequately served by measures

12

short of a blanket prohibition on identifying the Does—for instance, by redacting specific details about the circumstances of evacuation while permitting identification of the Does by name. Alternatively, the Government's interest might not support the restraint at all if, upon closer examination, the Does' situation is sufficiently distinguishable from actual intelligence cooperation that disclosure would not meaningfully impair recruitment credibility.

Similarly, the least-restrictive-means analysis requires evaluation of whether alternatives exist that would adequately serve the specific compelling interest at issue. The panel concluded that the order is the least restrictive means of protecting the identified interest. But this conclusion was reached without the district court having evaluated alternatives through the lens of the national-security-recruitment theory. The Masts proposed less restrictive alternatives—such as limiting speech restrictions to communications with a reasonable likelihood of reaching the Taliban, or providing a carve-out for communications necessary to prepare their defense. The panel dismissed these alternatives, but its analysis was conducted in the first instance, without the benefit of the district court's evaluation or further factual development.

Appellate courts are well-positioned to review the district court's decision, but not to conduct a fact-intensive strict-scrutiny analysis in the first instance. *See Pullman-Standard v. Swint*, 456 U.S. 273, 291–92 (1982); *cf. Zivotofsky ex rel.*

13

*Zivotofsky v. Clinton*, 566 U.S. 189, 201 (2012) ("In particular, when we reverse on a threshold question, we typically remand for resolution of any claims the lower courts' error prevented them from addressing."). That is why Courts of Appeals would ordinarily remand in this situation. *See, e.g.*, *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 633 (2d Cir. 2020); *Real Alternatives, Inc. v. Sec'y Dep't of Health & Hum. Servs.*, 867 F.3d 338, 387 n.35 (3d Cir. 2017). This is not an instance in which "the record permits only one resolution of the factual issue," *Pullman-Standard*, 456 U.S. at 292—even if the panel is correct that its articulated national-security interest *could* justify the prior restraint. Nor is this a case "where the proper resolution is beyond any doubt" or "where injustice might otherwise result" from not addressing the issue on appeal. *Singleton*, 428 U.S. at 121 (quotation omitted). In such circumstances, "a remand is the proper course." *Pullman-Standard*, 456 U.S. at 292.

The context of strict scrutiny again strengthens this conclusion. The Does, and to some degree the district court that issued the prior restraint, bear the burden of demonstrating that the restriction is narrowly tailored and the least restrictive means of achieving a compelling interest. If the Does wish to defend the protective order on the ground that it serves the Government's intelligence-recruitment interest, they should be required to carry that burden before the district court, where the Masts can develop the record, test the factual predicates of the claim, and propose alternatives calibrated to the specific interest asserted.

14

The panel's decision to affirm outright—resolving all elements of strict scrutiny in the first instance on a theory newly identified on appeal—is clear error that warrants rehearing.

### C. The panel's decision involves questions of exceptional importance that justify rehearing.

The questions presented by this case are of exceptional importance for several reasons.

*First*, the case involves a content-based prior restraint on core First Amendment speech, the most disfavored form of government regulation of expression. Prior restraints "bear[] a heavy presumption against [their] constitutional validity," *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963), and are "the most serious and the least tolerable infringement on First Amendment rights," *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). When such a restraint is sustained, the stakes for constitutional liberty are at their highest.

*Second*, the panel's approach—affirming a prior restraint under strict scrutiny on a *sua sponte* theory—sets a troubling precedent. If appellate courts supply compelling interests not advanced by the parties and then resolve narrow-tailoring inquiries without remand, the strict-scrutiny framework loses its teeth. The burden on the Government (or the party defending the restraint) becomes illusory if the appellate court itself shoulders the task of identifying and vindicating the compelling interest.

15

*Third*, the decision implicates the scope of the national-security exception to the prohibition on prior restraints. The panel's reliance extension of national-security cases like *Sims*, *Haig*, and *Snepp* to justify a restraint in a private civil custody dispute—where the United States has taken no position and no classified information is at stake—extends the national-security exception well beyond its established bounds. At a minimum, the full *en banc* court should weigh in before establishing a precedent that a private party's safety concerns in the context of civil litigation properly invoke the Government's compelling interest in protecting intelligence sources.

*Fourth*, the decision has practical consequences extending far beyond this case. If sustained, it would establish that any litigant whose circumstances of entry into the United States coincided with a U.S. military operation may invoke the Government's intelligence-recruitment interest as a basis for a prior restraint on an opposing party's speech—without the Government's participation or endorsement. This principle could reach thousands of individuals evacuated under Operation Allies Refuge and other programs. The implications for First Amendment jurisprudence and the rights of litigants in cases touching upon military operations warrant rehearing and *en banc* consideration, if necessary.

16

## CONCLUSION

For the foregoing reasons, the Masts respectfully request that this Court grant rehearing by the panel or, in the alternative, rehearing *en banc*. The Masts further request that, upon rehearing, the Court vacate the panel's decision and remand this case to the district court for further proceedings consistent with proper strict-scrutiny analysis—including an opportunity for the parties to brief and the district court to evaluate whether the compelling interest identified by the panel is established on the facts of this case, whether the protective order is narrowly tailored to serve that interest, and whether less restrictive alternatives are available.

Dated: May 6, 2026

Respectfully submitted,

/s/ *John S. Moran*

John S. Moran
MCGUIREWOODS LLP
888 16th Street, NW,
   Suite 500
Washington, DC 20006
Tel: (202) 525-0356

David Eliezer Yerushalmi
AMERICAN FREEDOM LAW CENTER
2020 Pennsylvania Avenue, NW,
   Suite 189
Washington, DC 20006
Tel: (646) 262-0500

*Counsel for Defendants-Appellants*

18

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of set forth in Fed. R. App. P. 40(d)(3) because it contains 3,833 words (based on the Microsoft Word word-count function), excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of FRAP 32(a)(6) because it has been prepared in a proportionately spaced typeface using Microsoft Word in Times New Roman, 14-point type.

Respectfully submitted,

/s/ *John S. Moran*

John S. Moran
McGuireWoods LLP
888 16th Street, NW,
    Suite 500
Washington, DC 20006
Tel: (202) 525-0356

David Eliezer Yerushalmi
American Freedom Law Center
2020 Pennsylvania Avenue, NW,
    Suite 189
Washington, DC 20006
Tel: (646) 262-0500

*Counsel for Defendants-Appellants*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2026, the foregoing Petition for Rehearing En Banc and Panel Rehearing was served on all parties or their counsel of record through the CM/ECF system.

Respectfully submitted,

/s/ *John S. Moran*

John S. Moran
MCGUIREWOODS LLP
888 16th Street, NW,
     Suite 500
Washington, DC 20006
Tel: (202) 525-0356

David Eliezer Yerushalmi
AMERICAN FREEDOM LAW CENTER
2020 Pennsylvania Avenue, NW,
     Suite 189
Washington, DC 20006
Tel: (646) 262-0500

*Counsel for Defendants-Appellants*