No. 24-1900

# In the
# United States Court of Appeals
# For the Fourth Circuit

JOHN DOE AND JANE DOE,
*Plaintiffs-Appellees,*

v.

JOSHUA MAST, STEPHANIE MAST, AND RICHARD MAST,
*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of Virginia
Case No. 3:22-cv-49

## RESPONSE TO APPELLANTS' PETITION FOR
## REHEARING EN BANC AND PANEL REHEARING

Maya M. Eckstein
Lewis F. Powell III
Kevin S. Elliker
HUNTON ANDREWS KURTH LLP
951 E. Byrd Street
Richmond, VA 23219
(804) 788-8200
kelliker@hunton.com

May 18, 2026                    *Counsel for Appellees*

[*Additional counsel listed on signature page*]

## TABLE OF CONTENTS

**Page**

Table of Authorities...............................................................................ii

Introduction ......................................................................................... 1

Argument.............................................................................................3

I.    The panel identified the legal significance of undisputed facts
      placed before this Court. ...........................................................3

II.   Remand for further analysis is unnecessary. ...............................9

III.  The panel decision does not warrant en banc review................... 13

Conclusion ........................................................................................ 18

Certificate of Compliance................................................................... 20

Certificate of Service ......................................................................... 20

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Adarand Constructors, Inc. v. Pena,*
515 U.S. 200 (1995) ...................................................................14

*Agudath Israel of Am. v. Cuomo,*
983 F.3d 620 (2d Cir. 2020)........................................................15

*Anderson v. Crouch,*
169 F.4th 474 (4th Cir. 2026).....................................................14

*Belk v. Charlotte-Mecklenburg Bd. of Educ.,*
211 F.3d 853 (4th Cir. 2000) ................................................. 13, 18

*Caldwell v. Palmetto State Sav. Bank of S.C.,*
811 F.2d 916 (5th Cir. 1987) ........................................................6

*Cent. Intell. Agency v. Sims,*
471 U.S. 159 (1985) ................................................................2, 12

*Clark v. Sweeney,*
607 U.S. 7 (2025) ......................................................................6, 7

*Dandridge v. Williams,*
397 U.S. 471 (1970) ...................................................................13

*Doe v. Fairfax Cnty. Sch. Bd.,*
10 F.4th 406 (4th Cir. 2021).......................................................18

*Edgar v. Haines,*
2 F.4th 298 (4th Cir. 2021)...........................................................2

*Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.,*
95 F.4th 181 (4th Cir. 2024).......................................................17

*Greenlaw v. United States,*
554 U.S. 237 (2008) ..................................................................6, 7

*Haig v. Agee,*
453 U.S. 280 (1981) ................................................................2, 12

*Kamen v. Kemper Fin. Servs., Inc.,*
500 U.S. 90 (1991) ........................................................................5

*Liberty Mut. Ins. Co. v. Atain Specialty Ins. Co.*,
    126 F.4th 301 (4th Cir. 2025)....................................................5

*Long v. Bondi*,
    151 F.4th 503 (4th Cir. 2025)..................................................7, 8

*Moreno v. Bosholm*,
    151 F.4th 543 (4th Cir. 2025)....................................................14

*Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) .................................................................15

*Nat'l Ass'n of Immigr. Judges v. Owen*,
    160 F.4th 100 (4th Cir. 2025)....................................................16

*Pullman-Standard v. Swint*,
    456 U.S. 273 (1982) ...............................................................10

*Real Alts., Inc. v. Sec. Dep't of Health & Human Servs.*,
    867 F.3d 338 (3d Cir. 2017)......................................................15

*Snepp v. United States*,
    444 U.S. 507 (1980) (per curiam)............................................2, 12

*TD Bank N.A. v. Hill*,
    928 F.3d 259 (3d Cir. 2019)......................................................11

*Tedrick v. LoanCare, LLC*,
    168 F.4th 154 (4th Cir. 2026)....................................................7

*United States v. Doe*,
    962 F.3d 139 (4th Cir. 2020) ....................................................12

*United States v. Harris*,
    890 F.3d 480 (4th Cir. 2018) ....................................................12

*United States v. Sineneng-Smith*,
    590 U.S. 371 (2020) ...........................................................6, 7, 14

*United States v. Smith*,
    780 F.2d 1102 (4th Cir. 1985) ...................................................2

*United States v. Sowers*,
    136 F.3d 24 (4th Cir. 1998) ......................................................11

*United States v. Zubaydah,*
     595 U.S. 195 (2022) ...........................................................................2

*Western Pac. R.R. Corp. v. Western Pac. R.R. Co.,*
     345 U.S. 247 (1953) .........................................................................16

*Wideman v. Innovative Fibers, LLC,*
     100 F.4th 490 (4th Cir. 2024)...........................................................6

*Winfield v. Bass,*
     106 F.3d 525 (4th Cir. 1997) ...........................................................10

## Statutes and Rules

4th Cir. R. 40(e) .......................................................................................17

Fed. R. App. P. 40(b)...............................................................................13

Fed. R. App. P. 40(b)(1)(A) .......................................................................1

Fed. R. App. P. 40(b)(2) ............................................................................1

## INTRODUCTION

The Masts' petition comes down to a complaint that the panel used the words "national security" while the district court and the Does used the words "personal safety." That is a quarrel about labels, not about law. It fails under the standards for panel rehearing—which requires an overlooked "point of law or fact," Fed. R. App. P. 40(b)(1)(A)—and for "disfavored" en banc review—which requires inter-circuit conflicts or questions of "exceptional importance," Fed. R. App. P. 40(b)(2).

The Does sought to protect their families in Afghanistan from being killed because the Taliban could perceive the Does as American collaborators. The district court found that risk real on *undisputed* evidence. The panel agreed that those findings justified the Protective Order's nondisclosure provision, because protecting people whom the Taliban would murder for their perceived ties to the United States military serves a compelling government interest.

The Masts' petition works hard to obscure this logical conclusion. It recasts the panel's reasoning as a rogue act of judicial intervention, as though the Court dreamed up a theory that the Does had not argued and no record evidence supported. But the Does told this Court that "Afghans

1

who are even perceived as having worked with the U.S. military have been persecuted in Afghanistan," Resp. Br. 17; that the Taliban would "so associate [the Does] based on the circumstances that brought them to the United States," *id.*; and that the Taliban "could well believe (incorrectly) that John Doe had been working for the United States, and carry out violence against the Does' families," *id.* at 53 n.14. Those undisputed facts directly supported the panel's analysis.[1]

The panel itself made the relationship between "personal safety" and "national security" explicit. In footnote 15, the panel observed that the district court's "undisputed factual findings *also* implicate the government's compelling interest in national security." Op. 20 n.15 (emphasis added). The word "also" signals that these are not competing theories. They are two labels for the same set of facts.

The Masts' petition identifies no overlooked fact, misapprehended legal principle, inter-circuit conflict, or question whose resolution will shape the law beyond this case. The Court should deny rehearing.

---

[1] Op. 16–17 (citing *United States v. Zubaydah*, 595 U.S. 195, 207–209 (2022); *Cent. Intell. Agency v. Sims*, 471 U.S. 159, 175–76 (1985); *Haig v. Agee*, 453 U.S. 280, 307 (1981); *Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980) (per curiam); *Edgar v. Haines*, 2 F.4th 298, 304 (4th Cir. 2021); *United States v. Smith*, 780 F.2d 1102, 1108 (4th Cir. 1985)).

## ARGUMENT

**I.    The panel identified the legal significance of undisputed facts placed before this Court.**

The Masts must establish that the panel's national-security rationale was "never advanced by any party and never relied upon by the district court." Pet. 7. The record makes short work of that claim:

- John Doe declared that he was "extremely worried" that the Taliban would "wrongly believe that I was helping the U.S. government in Afghanistan" because he and Jane Doe left Afghanistan "with the evacuation of many Afghans who had helped or worked with the U.S. government or other western governments." JA.344 (under seal).

- John Doe testified that "the Taliban have hurt or killed many people who worked with the U.S. government and have targeted their families to find them or pressure them to return," and that he feared the Taliban would "harm or kill our families in Afghanistan, either to punish us or because they believe that our families are spies for the U.S. government." JA.344 (under seal).

- The district court found that "[n]o party has presented any substantial evidence to challenge Plaintiffs' evidence that if their names become known, the Taliban could well believe (incorrectly) that John Doe had been working for the United States, and carry out violence against the Does' families remaining in Afghanistan as they have to those who provided assistance to the United States before the Taliban came to power." JA.316.

- The district court found that "the evidence before the Court demonstrates a continuing, clear, and substantial risk of physical harm to Plaintiffs' families in Afghanistan, should their identities become public." JA.316.

3

- The district court observed that the Masts "do not directly challenge Plaintiffs' evidence or present contrary evidence that John and Jane Doe and their families would not face such a risk of physical harm or even death." JA.316.

- The district court found "that the threat to Plaintiffs' families in Afghanistan, if Plaintiffs' identities become known, is anything but speculative." JA.317.

The record thus fully supports this Court's recognition that "[t]he district court concluded that the disclosure of the Does' identities would pose a grave and imminent risk of retaliation against perceived collaborators abroad, undermining the government's compelling interest in safeguarding the Nation's security." Op. 18. That is the Does' argument viewed from a different angle. The same uncontested record—Taliban targeting, perceived collaboration, evacuation by the United States military—establishes both the personal-safety interest and the national-security interest. The panel did not supply a new claim. It gave the Does' claim its doctrinal name.

The Masts complain that the panel "effectively relieved the Does of their burden under strict scrutiny" by identifying the national-security interest. Pet. 9. The premise is wrong. The Does carried their burden by presenting unrebutted evidence of Taliban targeting, perceived collaboration, and imminent danger—and the district court found that

4

burden met. JA.315–17, JA.326 n.12. The panel did not relieve the Does of any evidentiary obligation. It identified the legal conclusion that the district court's "undisputed factual findings" compel. Op. 20 n.15. Nor were the Masts denied a chance to respond. They briefed the application of strict scrutiny at length. *See* Appellants' Br. 32–40; Reply Br. 16–18. That they chose to contest the legal standard rather than the facts does not mean they lacked a forum to do so.

Even treating the panel's framing as a new theory, the result would be no different. The Supreme Court has long recognized that "[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991). Whether the Protective Order serves a compelling interest was briefed by both parties and squarely before the panel. Under *Kamen*, that is enough. *See also Liberty Mut. Ins. Co. v. Atain Specialty Ins. Co.*, 126 F.4th 301, 306 n.7 (4th Cir. 2025) (noting appellate "review is not limited to the grounds the district court relied upon" and this Court "may affirm on any basis fairly supported by the record") (citation omitted).

5

Indeed, "the party presentation principle is supple, not ironclad." *Wideman v. Innovative Fibers, LLC*, 100 F.4th 490, 494 n.3 (4th Cir. 2024) (quoting *United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020)). In *Wideman*, this Court considered a theory the parties had not advanced because it was "antecedent to . . . and ultimately dispositive of" the question before it. *Id.* The panel's approach here involved less of a leap: the Does briefed the factual predicate for the national-security characterization, even if they cited a different body of law. *See Caldwell v. Palmetto State Sav. Bank of S.C.*, 811 F.2d 916, 917 n.1 (5th Cir. 1987) (explaining that appellate courts may consider "arguments even though they are raised for the first time on appeal because they can be decided as a matter of law based on undisputed facts").

The Masts' authorities do not support a contrary conclusion. They invoke *Clark v. Sweeney*, 607 U.S. 7 (2025), *Sineneng-Smith*, 590 U.S. 371 (2020), and *Greenlaw v. United States*, 554 U.S. 237 (2008), but none controls here. *Sineneng-Smith* and *Clark* involved appellate courts substituting entirely new claims under distinct legal theories in place of the claims parties actually litigated. In *Sineneng-Smith*, the Ninth Circuit appointed amici to brief a legal theory the defendant never

6

pursued and decided the case on that basis. 590 U.S. at 376–380. In *Clark*, this Circuit replaced a prisoner's ineffective-assistance claim with "a claim that [the prisoner] never asserted" and decided the case on that new claim. 607 U.S. at 9. The Supreme Court reversed both times, calling these "radical transformation[s]" of the litigation. *Id.*; *Sineneng-Smith*, 590 U.S. at 380. *Greenlaw* is even further afield: the Eighth Circuit sua sponte increased a criminal defendant's sentence based on an error the government never raised, without the government having taken a cross-appeal. 554 U.S. at 242–43.

Here, the panel did nothing of the sort. It affirmed the Protective Order under a legal standard the district court applied, JA.326 n.12, based on the same factual record, in service of the same interest the Does had argued from the start. The Supreme Court has expressly acknowledged the propriety of such procedures. *See Greenlaw*, 554 U.S. at 250 n.5 (observing that "[t]he appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record").

The Masts also cite *Tedrick v. LoanCare, LLC*, 168 F.4th 154 (4th Cir. 2026), and *Long v. Bondi*, 151 F.4th 503 (4th Cir. 2025), where this Court declined to affirm on grounds that required "extensive analysis of

issues never addressed by the district court." *Long*, 151 F.4th at 519. Those cases are distinguishable on their facts. In each, the alternative ground required factual development the district court had never undertaken. Here, the district court found—and the Masts did not dispute—every fact on which the panel relied: the evacuation during Operation Allies Refuge, the Taliban's targeting of perceived collaborators, and the threats to the Does and their families arising from those circumstances. JA.315–17.

The Masts observe that the national-security cases the panel cited "involved the United States Government as a party asserting its own national security interests." Pet. 10. True—but irrelevant. Those cases establish a principle: protecting the identities of perceived U.S. collaborators serves a compelling government interest because disclosure undermines future intelligence cooperation. That principle does not evaporate because the government is not a named party any more than the compelling interest in eradicating racial discrimination disappears when a private plaintiff invokes it. A compelling interest is an objective category. It exists because the factual predicate establishes it, not

8

because a particular party asserts it. Here, the record does—on findings the Masts never contested.

## II.    Remand for further analysis is unnecessary.

The Masts' fallback is that, even if the panel correctly identified the compelling interest, it should have remanded for the district court to apply strict scrutiny in the first instance. Pet. 11–15. That argument founders on a stubborn fact: *the evidence is not in dispute.* Op. 20 n.15 (rooting discussion of the national-security interest in the district court's "undisputed factual findings").

The Masts do not contest that the Does were evacuated during Operation Allies Refuge. They do not dispute that the Taliban targets perceived collaborators. They do not challenge the district court's finding that the threat to the Does and their families is "anything but speculative." JA.317. As the district court noted, the Masts "do not directly challenge Plaintiffs' evidence or present contrary evidence that John and Jane Doe and their families would not face such a risk of physical harm or even death." JA.316.[2] The Masts' complaint is not that

---

[2] *See* JA.316 ("No party has presented any substantial evidence to challenge Plaintiffs' evidence that if their names become known, the Taliban could well believe (incorrectly) that John Doe had been working

9

the facts are wrong or that they lacked an opportunity to contest them. It is that they *chose* not to do so and now want a second chance to argue about the legal significance of findings they let stand.

But the legal characterization of undisputed facts is exactly the kind of question that appellate courts resolve without remand. Where undisputed facts need only be matched against a well-established standard, "a district court does not possess any institutional advantage." *Winfield v. Bass*, 106 F.3d 525, 534–35 (4th Cir. 1997). *Pullman-Standard v. Swint*, 456 U.S. 273 (1982), is not to the contrary. It requires remand where factual findings are necessary, not where the facts are already found and undisputed. *Id.* at 292 (explaining remand is unnecessary where "the record permits only one resolution of the factual issue").

---

for the United States, and carry out violence against the Does' families remaining in Afghanistan as they have to those who provided assistance to the United States before the Taliban came to power."); JA.317 ("The Masts have several counterarguments—*but no supporting evidence*[.]") (emphasis added); JA.323 n.9 (noting that the Masts' counsel argued that pseudonymity imposed burdens on the Masts but "did not back [that argument] up with any evidence or specifics at that time, or in the months that have followed"); JA.323 (noting Richard Mast's counsel offered "no specific facts, much less evidence" to support arguments against the Protective Order).

This Court has long been "[m]indful that we are not chained to the lower court's rationale but may affirm on any alternative ground supported by the record, we choose to follow a different analytic path." *United States v. Sowers*, 136 F.3d 24, 28 (4th Cir. 1998) (citations omitted); *see also TD Bank N.A. v. Hill*, 928 F.3d 259, 276 n.9 (3d Cir. 2019) (observing an appellate court "may affirm on any ground supported by the record as long as the appellee did not *waive*—as opposed to *forfeit*—the issue").

The Masts also assume that calling the compelling interest "national security" rather than "personal safety" requires a do-over of the narrow-tailoring analysis. Pet. 12–14. It does not. The objective is identical under either label: preventing disclosure of the Does' identities so the Taliban does not target their families as perceived American collaborators. Both the district court and this Court analyzed the nondisclosure provision and concluded it is narrowly tailored. Op. 20–23; JA.326 n.12. The Masts cannot explain how the analysis would differ depending on which label describes the danger.

The only factual question that arguably separates the two framings is whether violence against perceived American collaborators (other than

11

the Does or their families) would discourage future cooperation with the United States—a proposition so self-evident that the Supreme Court has never required proof of it. *Snepp*, *Haig*, and *Sims* all rest on the premise that the consequences of disclosure—violence against perceived collaborators—undermine future recruitment. Remanding to require the Does to prove through evidence that the murder of their family members would adversely affect U.S. intelligence recruitment would be as unnecessary as it is macabre.

There is a more fundamental reason that remand is unnecessary. The panel never reached—much less rejected—the Does' argument that the compelling interest in protecting the physical safety of innocent non-parties independently sustains the protective order. Resp. Br. 51–52 (citing *United States v. Doe*, 962 F.3d 139, 147 n.9 (4th Cir. 2020), and *United States v. Harris*, 890 F.3d 480, 492 (4th Cir. 2018)). The panel identified the national-security interest as a basis for affirmance; it did not hold that protecting the physical safety of innocent non-parties is *not* a compelling interest.

The personal-safety compelling interest remains an independent basis for affirmance that the panel did not need to reach. It rests on the

district court's alternative holding in which that court concluded that "there is a 'compelling' public interest in preserving Plaintiffs' safety and the safety of their families, who are innocent nonparties." JA.326 n.12 (citations omitted). The Does defended that holding. Appellees' Br. 34, 51–55. The Masts challenged it. Appellants' Br. 32–40. It was fully litigated. So even if this Court were to reconsider the national-security framing, the correct disposition would be affirmance on the personal-safety ground—not remand. *See Dandridge v. Williams*, 397 U.S. 471, 475 n.6 (1970).

## III.  The panel decision does not warrant en banc review.

Rehearing en banc is "not favored" and reserved for cases involving inter-circuit conflicts or questions of "exceptional importance." Fed. R. App. P. 40(b). This exacting standard reflects that panel decisions "hold out the prospect of finality and repose every bit as much as en banc decisions do." *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 211 F.3d 853, 854 (4th Cir. 2000) (Wilkinson, C.J., concurring in denial of rehearing en banc). The Masts' petition fails to satisfy any of the applicable criteria.

13

The Masts assert that the panel's decision conflicts with *Sineneng-Smith* and *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200 (1995). Neither case establishes a conflict warranting en banc review.

*Sineneng-Smith* reaffirmed the party presentation principle but expressly acknowledged that the principle "is not ironclad." 590 U.S. at 376. This Court recently confirmed this very point in *Anderson v. Crouch*, 169 F.4th 474 (4th Cir. 2026), explaining that courts have a duty "to decide cases correctly, even if that means considering arguments raised for the first time on appeal (or not raised by the parties at all)." *Id.* (quoting *Moreno v. Bosholm*, 151 F.4th 543, 558 (4th Cir. 2025)). Far from conflicting with *Sineneng-Smith*, the panel's decision falls squarely within that recognized exception.

*Adarand* is equally unavailing. In *Adarand*, the lower courts had applied the wrong legal standard entirely—intermediate rather than strict scrutiny—and thus no court had ever evaluated the government's justification under the correct framework. 515 U.S. at 238-39. Here, by contrast, the district court applied the correct standard, made comprehensive factual findings, and the panel drew the legal inference that those undisputed findings supported a compelling national-security

14

interest. *Adarand* did not hold that appellate courts may never affirm under strict scrutiny when the factual record is complete; it remanded because the record had never been considered under the applicable standard.

Nor is there any inter-circuit conflict. The Masts invoke *Agudath Israel of America v. Cuomo*, 983 F.3d 620 (2d Cir. 2020), and *Real Alternatives, Inc. v. Secretary Department of Health and Human Services*, 867 F.3d 338 (3d Cir. 2017), to assert conflicts with those circuits. But neither case holds that an appellate court may never affirm on a ground supported by uncontested facts in the record. Both involved situations where the government manufactured post hoc rationalizations that lacked evidentiary support—a circumstance fundamentally different from the panel's reliance on the district court's own findings to identify their legal significance. The prohibition on post hoc rationalizations bars courts from accepting justifications fabricated after the fact without record support. *See Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983). It does not bar an appellate court from recognizing the legal import of facts the district court already found on

15

an uncontested record. The Masts identify no circuit decision holding otherwise. There is no conflict to resolve.

Finally, the Masts style their petition as raising "questions of exceptional importance," but what they challenge is the panel's fact-bound application of strict scrutiny to the specific record before it. En banc review is not warranted merely because a party disagrees with the panel's application of established legal standards to facts. *See Western Pac. R.R. Corp. v. Western Pac. R.R. Co.*, 345 U.S. 247, 250 (1953); *Nat'l Ass'n of Immigr. Judges v. Owen*, 160 F.4th 100, 104 (4th Cir. 2025) (Thacker, J., concurring in denial of rehearing en banc) (noting en banc proceedings are called for when it is "necessary to maintain uniformity across cases and/or that the question at issue is one of exceptional importance").

The Masts claim the decision will have sweeping consequences for "thousands of individuals evacuated under Operation Allies Refuge." That hyperbole ignores the panel's narrow, fact-specific holding. The Protective Order rests on an extraordinary convergence of uncontested facts: a family evacuated by the U.S. military during the fall of Kabul, documented Taliban targeting of perceived collaborators, unchallenged

16

judicial findings of grave danger, and a narrow order limited to identity disclosure. The possibility that legal principles could theoretically apply elsewhere does not make them questions of "exceptional importance" warranting en banc rehearing—if it did, every case would qualify.

A grant of rehearing en banc would also vacate the panel's opinion in its entirety—not just the portions the Masts find objectionable. *See* 4th Cir. R. 40(e). That means all issues would be back on the table, including whether the First Amendment even applies to the nondisclosure provision and the jurisdictional question on which Judge King dissented in the Does' favor. *See* Op. 27–28 (King, J., dissenting).[3]

The Masts' petition amounts to a request that the full Court revisit whether the panel correctly applied established law to the facts— precisely the kind of merits disagreement that does not warrant en banc consideration. *See Doe v. Fairfax Cnty. Sch. Bd.*, 10 F.4th 406, 408 (4th

---

[3] For his part, Judge King observed that he "might have agreed with the panel majority's assessment that the district court did not at all abuse its discretion," but "'decline[d] to state any conclusive view on the issue'" given the lack of jurisdiction. Op. 28 n.* (King, J., dissenting) (quoting *Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, 95 F.4th 181, 193 n.1 (4th Cir. 2024) (Wynn, J., concurring in judgment in part and dissenting in part)). Either way, no member of the panel expressed any doubt that the Protective Order should stand.

17

Cir. 2021) (Wynn, J., concurring in denial of rehearing en banc) (criticizing the use of en banc dissents to "relitigate the merits of the panel's decision" rather than addressing the procedural standards for en banc review under the Rules). "Panel decisions refine, narrow, and focus issues before the court" and in "the vast majority of cases, panel decisions are the end of the matter." *Belk*, 211 F.3d at 854 (Wilkinson, C.J., concurring in denial of rehearing en banc)

***

The Masts frame their petition around abstract questions of appellate methodology. But there is nothing abstract about the danger the Does face. The district court found—and the Masts have never contested—that the Does' families confront "a continuing, clear, and substantiated risk of physical harm." JA.316. The Masts have not come close to clearing the bar required to disturb the panel's protection of those families.

**CONCLUSION**

The Court should deny the petition.

May 18, 2026                          Respectfully submitted,

                                     */s/ Kevin S. Elliker*

18

Maya M. Eckstein
Lewis F. Powell III
Kevin S. Elliker
HUNTON ANDREWS KURTH LLP
951 E. Byrd Street
Richmond, VA 23219
(804) 788-8200
meckstein@hunton.com
lpowell@hunton.com
kelliker@hunton.com

Brittany M.J. Record
Ehson Kashfipour
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
(202) 637-2200
brittany.record@lw.com
ehson.kashfipour@lw.com

Blair Connelly
Zachary Rowen
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10029
(212) 906-1200
blair.connelly@lw.com
zachary.rowen@lw.com

*Counsel for Appellees*

19

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the word limitation of Fed. R. App. P. 40(d)(4) because the portion of the brief subject to that rule is 3,706 words (based on the Microsoft Word word-count function) and therefore does not exceed the 3,900-word limit.

I further certify that the brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in 14-point Century Schoolbook typeface using Microsoft Word.

*/s/ Kevin S. Elliker*
Kevin S. Elliker

## CERTIFICATE OF SERVICE

I certify that the foregoing has been filed on this 18th day of May, 2026, using the Court's CM/ECF system, which will serve notice on all counsel of record.

*/s/ Kevin S. Elliker*
Kevin S. Elliker